·HARRIET HOGUE *et al.*

*v.*

SILAS STEEL *et al.*

*Opinion filed February 17, 1904.*

1. TRUSTS—*parol proof of resulting trust must be clear.* A resulting trust may be established by parol proof, but the burden is upon the party asserting the trust to establish the same by clear and convincing evidence.

2. HUSBAND AND WIFE—*common law rule as to a married woman's property presumed to prevail in foreign State.* In the absence of proof to the contrary it will be presumed the common law rule that the wife's money and the income from her real estate became the property of her husband upon marriage prevails in a foreign State.

3. SAME—*statute relating to married woman's property does not divest husband's rights acquired in foreign State.* The Illinois statute authorizing a married woman to retain title to her own property does not divest title to the wife's property which has vested in the husband during residence in a foreign State where the common law rule relating to married women's property prevails.

APPEAL from the Circuit Court of Clay county; the Hon. S. L. DWIGHT, Judge, presiding.

THOMASON & BOYLES, for appellants.

ROSE & McCOLLUM, for appellees.

Mr. JUSTICE BOGGS delivered the opinion of the court:

This was a bill in chancery for a decree partitioning and allotting the east half of the south-east quarter of section 27, town 5, north, range 6, east of the third prin-

cipal meridian, in Clay county, among the heirs-at-law of one William Steel, deceased. In the proceeding a cross-bill was filed asking that the title to the south-east quarter of the south-east quarter of the said tract be declared to be in one Harriet Hogue, and that the title to the north-east quarter of the south-east quarter of said tract be established in one Emma Cook.

Said William Steel, deceased, received a deed purporting to convey said tract of land to him on the fourth day of October, 1872. At once thereafter he made his home on said tract of land and resided there with his family until the time of his death, which occurred on the 11th day of January, 1901. He was a householder and the head of a family, and the tract of land was his homestead and did not at any time exceed $1000 in value. On the 26th day of March, 1891, said William Steel signed and acknowledged a deed purporting to convey the tract of land to his wife, Catherine Steel, but the wife did not join as a grantor in such deed, and the husband and the wife remained in possession of the homestead estate after the conveyance, during the remainder of his lifetime. The lands described in this deed being the homestead of the grantor and said Catherine, his wife, and being of value not exceeding $1000, and the possession remaining with the grantor, the deed to Catherine was without any legal efficacy to invest her with any interest or title in the land. (*Anderson* v. *Smith*, 159 Ill. 93; *Despain* v. *Wagner*, 163 id. 598.) The title therefore remained in said William Steel. Catherine, the wife, after the death of William, her husband, executed a deed purporting to convey the south forty-acre tract of the land to one Harriet Hogue, her daughter by a former husband, and at the same time the said Catherine executed a deed purporting to convey the north forty-acre tract to Emma Cook, a daughter by said William Steel, deceased. As Catherine had no interest in the fee of these lands her grantees took no interest in fee by reason of these deeds. Cath-

erine, the widow of said William Steel, deceased, died March 13, 1902, and on the 10th day of May, 1902, the appellee Silas Steel, a son of said William Steel, deceased, filed this bill in chancery against the other heirs-at-law of said Catherine Steel for a decree declaring the title to the land to be in the heirs-at-law of said William Steel, deceased, and for a decree partitioning the same among the heirs-at-law of said William Steel. Emma Cook and Harriet Hogue filed a cross-bill, in which they alleged said William Steel, deceased, purchased the said lands with money which belonged to his said wife, Catherine Steel, and without the knowledge or consent of the wife, and in violation of her rights, procured the title to the land to be conveyed to himself. The contention of the complainants in this cross-bill was, that a trust arose by operation of law in favor of Catherine Steel, and that said William Steel held the title to the land in trust for said Catherine; that he executed the deed to her in order to carry the trust into legal execution; that said Catherine thereupon became vested with the legal title to the lands, and conveyed good title to one tract thereof to one of the complainants in the cross-bill and good title to the other tract to the other of said cross-complainants. Upon a hearing a decree was entered dismissing the cross-bill and granting the prayer of the original bill.

We think the chancellor correctly decided that the evidence did not disclose facts requisite to create a resulting trust in favor of Catherine Steel. The burden of proof is on the party who asserts the existence of an implied trust. It may be established by parol proof, but the long established rule is, that the proof of the facts necessary to create the trust must be clear and convincing. (*Francis* v. *Roades,* 146 Ill. 635; *Koster* v. *Miller,* 149 id. 195; 15 Am. & Eng. Ency. of Law,—2d ed.—1174.) William Steel and wife moved to Illinois from Ohio in 1872, and he purchased the land in October of that year.

We find in the record proof of statements made by him to several witnesses, in substance, that "the money that bought the land was his wife's money." To Mr. Chesley he said he came out west (from Ohio) with his wife's money; that he invested it in this land and took the title in his own name. It was, however, proven by witnesses who had knowledge of the transaction which resulted in the purchase of the land, that the purchase price thereof was $500, and that Steel, in payment of that sum, gave a team of horses and their harness, and a wagon, and $250 in money. The same witnesses testified Steel procured the money by selling wheat which he raised and marketed before leaving the State of Ohio. Steel and his wife were married in Ohio in 1851, 1852, 1853 or 1854, the testimony as to such date being uncertain. She was a widow and acquired some property from the estate of her former husband, and there is some testimony that she owned some land in her own right. Steel had little or no property. The property of the wife was used in buying a home in Westchester, Ohio. This property was sold and other property bought in Monroe Mills, Ohio. The last named premises were sold and property·purchased near Mt. Vernon, Ohio. The dates of the sales and purchases of these different properties are not shown, nor is it disclosed in whose name the titles thereto, or any of them, were taken. In 1872 the Mt. Vernon property was disposed of, but for what price or how the same was paid for is not shown. Nearly or quite twenty years elapsed after their marriage before they moved to Illinois. There is no proof to show that the wife during that period kept separate control or ownership of the proceeds of the sale of the real estate. Indeed, the theory of the cross-bill is that the husband had possession of the moneys of the wife. The income of the wife's real estate and the money belonging to the wife, according to the common law, became the property of the husband, and so, also, did the choses in action belonging to her,

if reduced to possession by the husband. There being no proof to the contrary, we are to assume the common law prevailed in the State of Ohio during the period from 1851 to 1872. (*Crouch* v. *Hall,* 15 Ill. 263; *Tinkler* v. *Cox,* 68 id. 119; *Schlee* v. *Guckenheimer,* 179 id. 593.) It cannot be said the evidence discloses that this rule of the common law had not operated to invest the husband with the title to the proceeds of the sale of the real estate interests of the wife. The statute adopted in this State authorizing a married woman to hold and retain the title to her property has no effect to divest the title which has vested in the husband during their residence in a sister State where the common law rule obtained. (*Tinkler* v. *Cox, supra.*) The proof was therefore insufficient to show that Catherine Steel had legal ownership or title to any money or property which could have been applied by her husband in the purchase of the land. (*Keith* v. *Miller,* 174 Ill. 64; *Erringdale* v. *Riggs,* 148 id. 403; *Cissna* v. *Walters,* 100 id. 623.) That William Steel paid, in part, for the land in a team of horses, the harness for them, and a wagon, was well proven. There is no proof the wife had any interest therein.

The statements proven to have been made by William Steel as to the ownership of the money used in the purchase of the land may be fairly understood to mean no more than that as he had come into the possession of an equal or greater amount in money or property through his wife, she, as a mere matter of abstract right, ought to be regarded to be the owner of any money or property used in the purchase of land for their home.

The evidence, when carefully considered, was properly considered by the chancellor to be insufficient to show that Mrs. Steel was the owner of the money and property which were used in paying for the land.

The decree is affirmed.        *Decree affirmed.*