HENRY KOSTER *et al.*

*v.*

HELEN WISKER MILLER *et al.*

*Filed at Ottawa March 31, 1894.*

1. RESULTING TRUST—*purchase of land—with money belonging to purchaser's wife.* A bill by the heirs of a deceased mother, against the heirs of their step-father, to establish a resulting trust from the fact that such step-father bought land with money belonging to his wife, which she derived from her children, is insufficient, if it does not aver that the property from which the purchase money was realized was given to her, or even that she claimed such property. If the relation of parent and child existed between the step-father and the complainants during the time they furnished the mother money and property, the proceeds of their labor became his.

2. But independent of the question as to who was entitled to the proceeds of their labor, if the mother chose to allow the step-father to have the money as his own, even though she could have claimed it herself, no resulting trust arose by his investing it in his own name.

3. SAME—*when it arises—nature of proof.* A resulting trust can only arise where the purchase money is shown to have belonged to the alleged *cestui que trust,* which fact must be clearly alleged and proved. Parol proof is competent to establish the trust, but it must always be clear and satisfactory.

4. PARTIES—*on bill to establish a resulting trust.* On bill to establish a resulting trust against a deceased person, the heirs of his deceased brother are necessary parties.

5. Witnesses—*parties claiming and defending as heirs.* On bill by the heirs of a deceased mother, against the heirs of their step-father and husband of the mother, to declare a resulting trust as to land held by him, the complainants are incompetent witnesses.

6. Chancery—default—*what it admits.* A default in a bill in chancery admits only facts properly alleged, and not that those facts authorized the decree. It does not admit the conclusion of the pleader. If the bill is wholly insufficient to support the decree rendered, the error can be insisted on notwithstanding the default.

Writ of Error to the Circuit Court of Kane county; the Hon. Isaac G. Wilson, Judge, presiding.

Messrs. Jones & Rogers, for the plaintiffs in error.

Mr. F. G. Garfield, and Mr. W. J. Brown, for the defendants in error.

Mr. Justice Wilkin delivered the opinion of the Court:

This was a bill in chancery by the above named defendants in error, as surviving children and heirs-at-law of Mary Wisker Koster, against plaintiffs in error and one August Fisher, to enforce an alleged resulting trust. Plaintiffs in error claim as heirs of Nicholas Koster, deceased, who was the husband of Mary Wisker Koster. The bill was filed to the February term, 1887, of the court below. On the 14th of February, John and Nicholas Koster and Anna Holtzbentel were defaulted. Subsequently, Henry Koster answered the bill, and August Fisher filed a disclaimer. The latter has no interest in the case. The cause proceeded to a hearing, and a decree was entered according to the prayer of the bill. Henry Koster alone sued out this writ of error, but subsequently, upon his motion, the other plaintiffs in error were made parties.

We regard the bill wholly insufficient to authorize the decree, even though every material allegation of it had been sustained by competent proof. The case attempted to be made is, that Nicholas Koster, the husband, purchased the land in controversy with money belonging to Mary Wisker Koster, his

wife, taking the title in his own name, thereby creating a resulting trust in him for her use. The following facts appear from the bill: Mary Wisker Koster was formerly married to one Nicholas Wisker, of which marriage defendants in error were born. The family resided in Germany, where the father died in 1853. The widow afterward married Nicholas Koster, and in 1857 they, with her children, came to this country. They lived in Chicago until the fall of that year, the husband and oldest son working in the country, when they removed to DuPage county and lived upon a small piece of land which they rented. They then leased a farm of eighty acres, on which they resided for five years, and at the expiration of that term rented another eighty-acre farm, which they occupied for a like term of five years. At the time of her marriage with Nicholas Koster, Mary Wisker owned a small piece of property in Germany, which she sold prior to leaving that country, but the bill shows affirmatively that the proceeds of that sale were all expended in the voyage to America and in the support of the family prior to the leasing of the first eighty acres, and the attempt is to show that during the ten years in which the family occupied and cultivated the two eighty-acre farms, the mother of complainants acquired the money with which the land in controversy was purchased.

There is an indefiniteness in many of the statements made in relation to the family during this period, but applying the rule that pleadings are always to be taken most strongly against the pleader, the bill shows that Nicholas Koster was, during that time, residing with the family on the farm, maintaining the relation to Mary Wisker Koster and her children, of husband and father. While it is averred that he was a man without ability or inclination to make money, indolent and dissolute in his habits, it can not be seriously contended that the question as to whether he sustained that relation to the family would depend upon his habits or ability to make money. It is not shown that he did not become the tenant of both of

the farms, and it may be fairly inferred from the allegations of the bill that he did. At least in one instance he was consulted about the disposition of the crops, and his advice, which proved to be very unwise, followed.

Turning to the allegations as to the obtaining of the money with which this land was purchased, we find it stated that "William and Frank (two of the sons) worked away from home among neighbors and farmers when not engaged in work and carrying on the farm, while the mother and eldest sister helped carry on the farm, working in the fields as well as in the house; * * * that William and Frank earned money and purchased teams, wagons, tools and stock wherewith to stock and carry on the farm, besides money in different sums which they *handed over* to their mother." Also, that during the second term of five years "William, Frank and Nicholas, besides helping their mother and sister in working the last mentioned farm, worked away from home among the neighbors and farmers, earning money in different amounts, which they either *handed over* and gave to their said mother, or *laid out and expended* for their said mother, so that at the end of their term upon said place a fine personal property of horses, wagons, stock, steers, young cattle, and all the usual implements and machinery necessary and requisite to the carrying on of a farm, had been so acquired and *put in the said mother's possession,* aside from any sum of money which she might have saved up during the time so named, *when handed to her by said complainants.*" It will be observed that these averments wholly fail to state the value of the money or property mentioned, and are indefinite and uncertain as to whether the money and property were handed over and delivered by the sons to the mother as gifts to her or merely as a custodian. In fact, the latter is the only fair inference to be drawn from the language used. "Which they handed over to their mother,"—"which they put in possession of their said mother,"—"so acquired and put in the said mother's possession,"—are expressions inconsistent with

the idea of the mother becoming the owner of such property in her own right.

The bill then proceeds: "That during the period of ten years aforesaid, the work performed by the step-father, by reason of the causes hereinbefore recited, was not worth his board and clothing had and used during such period; and complainants further show, that at the end of their term on the last mentioned place, and the putting in the possession of their said mother the personal property and effects, as afore-said, and having arrived at, and some of them beyond, their majority, and even *handed over* to their mother moneys they had earned after they became of age, and the time having arrived when it was necessary that each should look after his own individual interests, and having *put into the possession* of their mother the means that would secure her against poverty and want, the further work of farms by their united efforts was abandoned, and each prepared to look thereafter for his own separate interest; and thereupon the said mother and step-father proceeded to sell the personal property so ac-quired and *put in possession,* as aforesaid, at public sale, taking time promissory notes for the same, and when said promis-sory notes matured, said Nicholas Koster collected the same, and with the money so collected purchased of one Hiram Walker a part of the north-east quarter of the north-west quarter of section 36, * * * and without the said mother's knowledge or consent took the title thereof in his own name." It is then alleged that the complainants, or some of them, moved the mother and step-father on the place so purchased, and fixed the same up for them a home, and that they, by rent-ing the land and from the produce raised thereon, obtained their living. "When the mother complained to the step-father, as she often did, that he had taken the title to the property, the earnings of herself and children, in his own name, he would pacify her that her children should have it when they were done with it, and so the said mother and step-father continued

to live together on the little place, in the manner recited, until the 22d day of August, 1885, when the mother of your complainants, said Mary Wisker Koster, died intestate, and on the 14th day of August, 1886, the step-father, Nicholas Koster, died intestate, leaving as his only heirs-at-law, two brothers, John Koster and Nicholas Koster, residents of Luxemburg, and one sister, Anna Holtzbentel, a resident of Wisconsin."

These are the only allegations in the bill from which it can be concluded that the money paid to Walker for this land was the money of complainants' mother. As already shown, it is not averred that the property from which it was realized was given to her, and it is remarkable that in all the statements of this bill there is no allegation from which it can be said, or even inferred, that she claimed such property or the money realized from its sale, or that Nicholas Koster at any time recognized such right in her. As a matter of law, if the relation of parent and child existed between the step-father and these complainants during the time mentioned,—and, as we have said, there is nothing to show the contrary,—the proceeds of their labor became his property. *Bond* v. *Lockwood,* 33 Ill. 212; *Mowbry* v. *Mowbry,* 64 id. 383; *Capek* v. *Kropik,* 129 id. 509.

But, independent of the question as to who was entitled to the proceeds of their labor, it will not be seriously questioned that if the mother chose to allow the step-father to have the money as his own, even though she could have claimed it herself, no resulting trust arose by his investing it in his name. It is too clear for argument that a resulting trust of this kind can only arise where the purchase money is shown to have belonged to the alleged *cestui que trust,* which fact must be clearly alleged and proved. The trust arises, if at all, at the time the deed is taken, and upon the facts then existing. (*Alexander et al.* v. *Tams et al.* 13 Ill. 221.) Parol proof is competent to establish the trust, but it must always be clear and satisfactory. (*Boyd* v. *McLean,* 1 Johns. Ch. 590; *White-*

*more* v. *Larned,* 70 Me. 276 ; *Mahoney* v. *Mahoney,* 65 Ill. 406.) The peculiar circumstances of the family relation here existing strongly incline a court to sustain complainants' claim to this land, but to do so upon this bill, on the theory that a resulting trust existed, would be a violation of every legal principle, and render paper titles altogether uncertain, if not worthless.

It is true that a part of the defendants below suffered a default, and could not, therefore, be now heard to question the sufficiency of the evidence; but their default admits only facts properly alleged, and not that those facts authorized the decree rendered. (*Gault* v. *Hoagland,* 25 Ill. 266 ; *Wing* v. *Cropper,* 35 id. 256 ; *Thompson* v. *Dearborn,* 107 id. 87.) A default, in equity, does not admit the conclusion of the pleader from the facts. If, therefore, as we have seen, the bill is wholly insufficient to support the decree rendered, the error can be insisted upon here, notwithstanding the default.

As we shall remand the cause generally, thereby giving complainants an opportunity to amend their bill if they can do so, other questions raised, which may affect another hearing, will be briefly disposed of. It is clear that in order to make a valid decree against all parties interested, the heirs of the brother of Nicholas Koster, who seems to have died pending the action, should be made parties to any future proceeding in the cause.

We are clearly of the opinion that, as the record now stands, the children of Mary Wisker Koster are incompetent to testify against those claiming under Nicholas Koster.

We do not consider the question of *laches,* raised by plaintiffs in error, as of controlling importance in the case, if the trust relation existed, as claimed by complainants.

The decree of the circuit court will be reversed, and the cause remanded to the circuit court, where leave should be granted the complainants, if asked, to amend their bill.

*Decree reversed.*