# PERKINS *v.* TYRER.

EQUITY PRACTICE; BILL OF REVIEW; DECREE PRO CONFESSO.

1. While ordinarily before a bill of review can be filed the decree sought to be reviewed must be first obeyed and performed, prior obedience or performance may be excused by poverty, want of assets, and other inability to perform the decree.

2. *Quære,*—Whether, where one of several defendants against whom a decree has been passed in a suit in equity by nonresidents has died, his executrix, before filing a bill of review, must first obey or perform the decree, where to do so would require money of the estate to be paid out.

3. An order overruling a motion to strike a bill of review from the files of the court, which motion is based upon the failure of the complainants to first perform the decree against them, is the equivalent of a special leave to file a bill of review without such previous performance, and in granting such leave the court acts in the exercise of a sound legal discretion, which is not subject to review on appeal unless it has been abused.

4. If the allegations of a bill in equity are distinct and positive they may be taken as true, and, in the absence of a defense, a decree may be passed for the complainant, without proof; but, if they are indefinite, or if the demand of the complainant is in its nature uncertain, the requisite certainty must be afforded by proof.

5. A decree *pro confesso* admits the facts charged in the bill of complaint, but not the conclusions drawn therefrom, nor conclusions of law.

6. It is error, apparent on the face of a decree in equity, making it reviewable by bill of review, if, taking the whole previous record into consideration, exclusive of the evidence, it is plain that no cause of action has been stated sufficient to justify the decree.

7. A personal decree against several defendants, passed on their default without proof in support of the bill of complaint, which was based upon a written contract between some and not all of the parties to the cause, which contract the bill erroneously and without warrant stated the meaning and effect of was to show a loan with collateral security, while, as a matter of fact, such contract showed, if anything, a conditional sale not entitling the complainants to relief,—may be reviewed by bill of review.

8. An order overruling a demurrer to a bill of review is not erroneous be-
cause it fails to allow the defendants to plead over to such bill,
where the bill was filed solely upon the ground of error of law ap-
parent on the face of the decree, and the demurrer raised the only
question that could be raised, so that when that was disposed of
there was nothing else left in the case.

9. An order overruling a demurrer to a bill of review and vacating the
decree reviewed should direct a dismissal of the original bill, unless
the same be amended, where such bill of complaint is fatally defective.

No. 1439. Submitted November 2, 1904. Decided December 4, 1904.

HEARING on an appeal by the defendants from an order of the
Supreme Court of the District of Columbia, overruling a de-
murrer to a bill of review, vacating the decree sought to be re-
viewed, with leave to the defendants to the original bill to plead,
answer, or demur thereto within a prescribed time.

*Affirmed.*

The COURT in the opinion stated the case as follows:

′ On October 23, 1893, Bishop W. Perkins, now deceased, and
Richard Quay, as parties of the first part, and Theodore W.
Tyrer, Charles A. Maxwell, George S. Chase, and Heman D.
Walbridge, the last named now deceased, as parties of the second
part, entered into a contract for the sale or hypothecation of
certain stock of the Washington & Chesapeake Beach Railway
Company, which, as it is brief, and as it forms the burden of
the present proceedings, we transcribe here in full. It is as
follows:

This memorandum entered into this 23d day of October,
1893, between B. W. Perkins and Richard Quay, of the first
part, and T. W. Tyrer, C. A. Maxwell, H. D. Walbridge, and
George S. Chase, of the second part, witnesseth: That whereas
the said first parties have this day paid to said George S. Chase
five hundred ($500) dollars in cash, the receipt whereof is here-
by acknowledged, and have executed and delivered to him their
seven promissory notes of even date herewith, for the aggregate

sum of two thousand ($2,000) dollars, all of said notes bearing interest from date, at the rate of 6 per cent per annum, and maturing three months from date hereof, and whereas, the said T. W. Tyrer has indorsed in blank and delivered to said first parties certificates Nos. 6 and 7 for two hundred shares of the capital stock of the Washington & Chesapeake Beach Railway Company, of the par value of fifty ($50) dollars per share. Now, in consideration of the premises, the said second parties hereby agree that within twelve months from the date hereof they will purchase said shares of stock so sold, as aforesaid, to said first parties, and pay therefor the full sum of five thousand ($5,000) dollars.

It is mutually understood and agreed, however, that if, at any time prior to the maturity of the notes herein mentioned, to wit, three months from the date hereof, the said first parties shall notify said second parties that they do not desire to sell said stock, as herein provided, and shall return to said second parties the collateral hereinafter mentioned, and surrender this contract, then this memorandum shall be void and the stock so delivered to said first parties shall become and remain their absolute property.

In further consideration of the covenants of the said first parties the said T. W. Tyrer agrees that he will assign and deliver to the said first parties two hundred shares of the full paid and non-assessable stock of said railway company to be held as a pledge for the faithful performance by said second parties of their agreement as herein set out, to become the absolute property of said first parties in case of any failure on the part of said second parties to purchase said stock as herein stipulated or perform any of the covenants of this memorandum.

In witness thereof the said parties have hereunto set their hands the day and year first above written.

> T. W. Tyrer,
> Geo. S. Chase,
> C. A. Maxwell,
> Heman D. Walbridge.

This memorandum of agreement, notwithstanding that it purports in the attestation clause to have been signed by all the parties was in fact signed only by the parties of the second part. But it is conceded that the parties of the first part accepted it, paid to Chase the $500 in cash required to be paid; delivered to him their promissory notes for the aggregate sum of $2,000, as required; received from Tyrer the certificates for 200 shares of stock, which became the subject of transfer and sale between them, and also certificates for the additional 200 shares of stock contracted to be delivered as collateral security; and paid the seven promissory notes at maturity. It appears, also, that the parties of the first part did not notify the parties of the second part at any time within the three months for which the notes were to run, or indeed, at any other time, that they did not desire to sell the stock which it was stipulated that the parties of the second part might repurchase; and that they did not surrender the collateral stock or deliver up the contract. And it appears further that the parties of the second part did not within twelve months, as stipulated, purchase, or seek to purchase, the stock so as aforesaid assigned and transferred to the parties of the first part, and conditioned upon the happening of a certain contingency to become the absolute property of these latter. In fact, nothing further seems to have been done by either parties in the way of availing themselves of the rights reserved by the agreement.

On June 20, 1894, Bishop W. Perkins died, and Louise E. Perkins was duly appointed in the following month as administratrix of his estate. Then, on March 18, 1895, Louise E. Perkins, as administratrix of B. W. Perkins, and Richard Quay filed their bill of complaint in the supreme court of the District of Columbia, in equity, wherein, after setting forth the aforesaid contract, and the facts which have been stated, alleged, in accordance, as they say, with the advice of counsel learned in the law, that the true meaning and legal effect of the aforesaid agreement was that the sum of $2,500, aforesaid, was a loan from Perkins and Quay to the parties of the second part, and the delivery of the 400 shares of stock merely a collateral security for

the repayment of such loan. Wherefore they prayed that the defendants, the parties of the second part to the agreement, should be adjudged to be indebted to the complainants in the sum of $2,500 and interest, and that the stock should be sold and the proceeds applied towards the payment of the indebtedness.

To this bill there was a demurrer by the defendants, which was overruled. Leave to answer was given, but the defendants failed to answer, and a decree *pro confesso* was rendered against them. This decree in due time was made absolute and final, and thereupon, on the pleadings alone, without any testimony whatever taken, the court adjudged and decreed that the defendants were indebted unto the complainants in the sum of $2,500, with interest from October 23, 1893, being the amount of the loan to the defendants, and that the complainants should have execution therefor as at law; also, that the 400 shares of stock held as collateral security for such loan should be sold, and the proceeds applied to the payment of such indebtedness, and the course of procedure of sale was directed.

This decree was rendered November 5, 1895. On April 23, 1896, a writ of fieri facias was issued and returned *nulla bona.* The next step, according to the record, was the filing of a bill of review by the defendants against the complainants for error of law apparent on the face of the decree and of the record. After the recital of all the proceedings in the cause, it was averred in this bill of review that the substantial allegations in the original bill were not statements of fact, but mere conclusions of law, and erroneous conclusions at that, upon which it was incompetent for the court to base a decree, and that such original bill should have been dismissed. This bill of review was filed on October 8, 1896.

On May 28, 1898, nearly a year and eight months after it was filed, a motion was made by the defendants to it to dismiss it on the ground that the complainants therein had not performed the decree which they sought to review, and had not paid the costs of the suit.

There was an exceedingly long period of inaction before this

motion was brought to a hearing or any other step taken in the case. The next thing we find in the record consists of two affidavits, one by Maxwell and one by Tyrer, filed on March 27, 1903, in which they seek to excuse their failure to perform the decree on the ground of poverty. Maxwell, also, in his affidavit alleges, as another reason, that no account had been rendered of the sale of the 400 shares of stock, and that Louise E. Perkins and Richard Quay were nonresidents against whom no recourse could be had for the recovery of the money if it were paid to them. The motion was then brought on for hearing, and it was denied. In the order of denial it was properly treated and designated as a motion to strike the bill of review from the files of the court, rather than as a motion to dismiss. Leave was granted to the defendants, the original complainants in the case, to demur, plead, or answer to the bill of review within ten days, and they elected to demur to it.

The cause was then heard on the bill of review and the demurrer thereto; and the demurrer was overruled, and the decree sought to be reviewed was vacated and decreed to be held for naught, with leave to the defendants to the original bill to plead, answer, or demur thereto within twenty days. From the decretal order of the court in the premises an appeal was taken to this court, and doubt being entertained as to the right of the parties to take such appeal, application was made to this court for the allowance of a special appeal, and such special appeal was allowed. The cause, therefore, is now before this court for review.

*Mr. Chapin Brown* and *Mr. J. P. Earnest* for the appellants.

*Mr. Frederic D. McKenney* and *Mr. J. Spalding Flannery* for the appellees.

Mr. Justice MORRIS delivered the opinion of the Court:

The appellants have assigned threefold error: 1st. They say that it was error in the court below to refuse to strike the bill of

review from the files for the reason that the defendants had failed to perform the decree of November 5, 1895. 2d. They say, in the second place, that there is no error apparent on the face of that decree; and the error, if any there was, should have been remedied by appeal. 3d. In the third place, they say that, upon the overruling of their demurrer to the bill of review they should have been allowed to plead over.

1. As to the first assignment of error, it is undoubtedly the practice in chancery and the rule of law, subject, as it has been held, to some exceptions, that before a bill of review can be filed the decree must be first obeyed and performed; and that if, as in the case before us, money is directed to be paid, it ought to be paid before the bill of review is filed, though it may afterwards be ordered to be refunded. 2 Dan. Ch. Pr. 1582; Story, Eq. Pl. § 406; *Ricker* v. *Powell,* 100 U. S. 104, 25 L. ed. 527; *Wiser* v. *Blackly,* 2 Johns. Ch. 488. But the exceptions to the rule are equally well settled and established; and among them are poverty, want of assets, other inability to perform the decree. *Davis* v. *Speiden,* 104 U. S. 83, 26 L. ed. 660; *Wiser* v. *Blackly,* 2 Johns. Ch. 488. Here two at least of the defendants against whom the original decree had been rendered showed by affidavit the want of assets to enable them to perform the decree; and they at least had the right to file a bill of review without previous performance of the decree. Another of these defendants, Walbridge, died after the filing of the bill of review, but apparently before the motion to strike it from the files came up for hearing, and his executrix became a party to the suit in his stead. It may well be questioned whether, in her position of trust and responsibility, she should have paid out money of the estate under her charge to nonresident complainants, probably without assets in this District. But this is a question which it is not necessary for us to decide.

The fact is that the court below permitted the bill of review to be filed, and refused to strike it from the files when moved to do so by the opposing parties upon this very ground of the failure of the parties filing it to perform the decree against them. This was the equivalent of a special license to file the bill without

such previous performance. In granting this license, or re-fusing to strike out the bill, the court acted in the performance of a sound judicial discretion (*Davis* v. *Speiden,* 104 U. S. 83, 26 L. ed. 660), and such discretion is not the subject of review in an appellate court, except, of course, as in all other cases, for the abuse of it.

In the case of *Davis* v. *Speiden,* 104 U. S. 83, 26 L. ed. 660, cited, which went up to the Supreme Court of the United States from this District, and in which the opinion was pronounced by Mr. Chief Justice Waite, who had also written the opinion in the case of *Ricker* v. *Powell,* 100 U. S. 104, 25 L. ed. 527, be-fore cited, that court, after a careful and elaborate consideration of the history of the rule and of the decisions based upon it, said:

"Whatever may be said in such cases, which are really only bills in the nature of bills of review, and which can only be filed on special license, we think it clear that as to bills which relate to errors on the face of the decree alone, and which may be filed without leave, no such rule prevails. The filing without per-formance is in the nature of privilege, not jurisdiction. The courts of some of the States have so treated it (*Forman* v. *Stick-ney,* 77 Ill. 575), and we are clearly of the opinion that such is the better practice and fully recognized by all the early English cases. Performance does not establish the error, but only makes it the duty of the courts, when called on in a proper way, to in-quire as to any errors that may have been committed. Whether the courts will enter on such an inquiry without performance de-pends upon the exercise of a sound judicial discretion applied to the facts of the particular case."

This will suffice to dispose of the first assignment of error.

2. The second assignment of error brings up the vital ques-tion in the case,—whether there is error apparent on the face of the decree for which a bill of review will lie. We are clearly of opinion that there is such error.

The decree adjudges that there was a loan of $2,500 made by the plaintiffs to the defendants, and that the 400 shares of stock had been delivered as security for the repayment of such loan.

There is absolutely no allegation whatever in the bill of complaint upon which to found such an adjudication. The sole substantial allegation of that bill, after the statement of the execution of the contract by the parties, is that the true meaning and legal effect of the contract was and is that the transaction was a loan with collateral security for its repayment, and that the complainants had been so advised by counsel learned in the law. This is not a statement of fact, but merely of a conclusion of law, and a most erroneous and unwarranted statement of the legal effect of the document. If the English language has any meaning, the contract on its face is not one of loan and security for its repayment, but one of conditional sale, which is a very different thing. Now that the transaction may in fact have been one of loan and security is not at all impossible. The contract is a very singular one. There was something behind it which was not disclosed by the document itself. But whether the transaction was intended to cloak the taking of usurious interest, or was some kind of stock jobbing in stocks of problematical value, is of no consequence here. The fact remains that, while it was open to the complainants to set forth the true nature of the transaction, if it was not a conditional sale, as it purports to be on its face, they were most remarkably silent on the matter. One at least of the complainants must have known the actual facts. Why has he not stated them? The other complainant, who sues only as a representative of a deceased party, may have no personal knowledge of the transaction, but she could base her allegations on information derived from her cocomplainant. She has not done so. Both of the complainants hold back the facts and content themselves with an allegation of advice received from counsel learned in the law as to the true meaning in law of the memorandum of contract under consideration. And we are wholly unable to see how on its face the memorandum can be held to mean anything of the kind. As we have said, it was competent for the complainants to allege that the transaction was one of loan and security therefor, and if the allegation was controverted, to prove the fact, if fact it was. But the allegation of a conclusion of law, and especially of an erroneous and

unwarranted conclusion of law, is not the equivalent of an allegation of fact and to be taken upon default as the basis of a decree *pro confesso,* and ultimately of a final decree.

It has been held in numerous cases that, if the allegations of a bill of complaint are distinct and positive, they may be taken as true without proof, if the defendant makes no defense; but that, if they are indefinite, or if the demand of the complainant is in its nature uncertain, the requisite certainty must be afforded by proof. *Ohio C. R. Co.* v. *Central Trust Co.* 133 U. S. 83, 33 L. ed. 561, 10 Sup. Ct. Rep. 235; *Thomson* v. *Wooster,* 114 U. S. 104, 29 L. ed. 105, 5 Sup. Ct. Rep. 788; *Craig* v. *Horine,* 1 Bibb, 113; *Williams* v. *Corwin,* Hopk. Ch. 471. And it has also been held that a decree *pro confesso* admits the facts charged in the bill, but not the conclusions drawn therefrom, nor the conclusions of law. *Koster* v. *Miller,* 149 Ill. 195, 37 N. E. 46; *Russell* v. *Lathrop,* 122 Mass. 300. Whether the complainants in the present case could have supplied the fatal deficiency of allegation in their bill of complaint by the introduction of testimony need not here be determined, since there was no testimony taken, and the fatal deficiency remains. That bill as it stands is wholly insufficient on which to base any decree. And it is error apparent on the face of the decree if, taking the whole previous record into consideration, exclusive of the evidence, it is plain that no cause of action has been stated sufficient to justify the decree. *Shelton* v. *Van Kleeck,* 106 U. S. 532, 27 L. ed. 269, 1 Sup. Ct. Rep. 491; *Buffington* v. *Harvey,* 95 U. S. 99, 24 L. ed. 381.

It is unnecessary to pursue the subject further. We think the authorities fully warrant the holding that the bill of complaint in this case was fatally defective in stating no cause of action; that the decree which was rendered was not warranted by the bill; that, therefore, there was error apparent on the face of the decree, and that such decree was properly vacated in pursuance of the bill of review filed for that purpose.

The second assignment of error, therefore, we must regard as untenable.

3. The appellants do not greatly, if at all, insist upon their

third assignment of error, which is to the effect that, upon the overruling of their demurrer to the bill of review, they should have been permitted to plead over to that bill. Plainly the position is wholly untenable. There was no place to plead over; nothing to be reached by plea or answer to the bill. The bill of review was filed solely upon the ground of error of law apparent on the face of the decree. A demurrer to the bill raised the sole and only question that could be raised, and when that was disposed of there was nothing else left in the case. Neither as a matter of right nor as a matter of privilege were the defendants to that bill of review entitled to any further pleading.

Besides the questions of law which have been discussed, it is to be noted that two of the defendants who signed the memorandum of agreement—namely, Maxwell and Walbridge—are not shown to have had any connection with the transaction other than that of attaching their names to the paper. If the contract was really one of loan and security for its repayment, the loan, so far as the paper shows, was made to Chase alone, and the security was given by Tyrer. Maxwell and Walbridge had nothing to do either with the receipt of the money or the transfer of the stock, and it was manifestly improper and beyond the jurisdiction of the court to charge them as borrowers of the money without some allegation in the bill of complaint that they were jointly interested with Chase and Tyrer in the transaction. For this reason alone, even if for no other reason, the decree was fatally defective on its face, so far as Maxwell and Walbridge were concerned.

It follows, in our opinion, that the action of the court below in overruling the demurrer to the bill of review, and vacating the decree reviewed and the previous proceedings in the cause, was right and proper. That action left the original bill of complaint standing, with leave to the defendants to plead, answer, or demur thereto within twenty days. That action probably does not go far enough. From what we have said, it must be held, upon the interposition of a demurrer, by the defendants, that the bill is fatally defective, and must be amended if the complainants would succeed in their cause. The order may as

well provide that this bill be dismissed, unless the complainants therein shall amend the same within a specified time.    But the course of procedure in this regard will be left to be determined by the court below.

The order appealed from will be affirmed, with costs; and the cause will be remanded to the Supreme Court of the District of Columbia for further proceedings therein in accordance with law, and not inconsistent with this opinion.          *Affirmed.*