MARY L. FORRESTER and CARY W. FORRESTER, *Appellants*, v. JOHN D. WATTS, *Appellee*.

Opinion Filed February 28, 1917.

1. The law will engraft a trust upon an absolute and unconditional deed where there is fraud, actual or constructive, in the transaction.

2. In order to engraft a trust upon an absolute and unconditional deed, the proof must be so clear, strong and unequivocal as to remove every reasonable doubt as to the existence of the trust.

3. Where it is claimed that a widow who buys real estate and takes an absolute and unconditional deed in her own name, holds the lands in trust for her deceased husband's heirs by reason of a prior contract between him and her grantor for the purchase of the property conveyed to her, the proof of the existence of such contract and its terms and conditions must be as strict as is required by the rule in this State to establish a resulting or constructive trust, and the statement of a wit-

ness of his conclusion that there was such a contract, without stating all the facts which are essential to create a valid contract, is not sufficient to defeat the deed.

4. The quantity and proportionate interest of the parties in a partition suit is not determined by what they claim, but by what the testimony proves they are legally entitled to. The question of the interests of all the parties must be adjudicated by the court, and a mistake on the part of a party to the suit as to what his interest is, will not bar his being decreed what he is entitled to, even if he remains passive and abstains from making any answer.

Appeal from Circuit Court for Jackson County; A. G. Campbell, Judge.

Decree reversed.

## Statement.

Appellee, the complainant below, brought a bill for partition of real estate, in Jackson County, against Mary L. Forrester and Cary W. Forrester, her son. The bill in substance states that in 1902 when B. M. Forrester, the husband of Mary L. Forrester, died, he owned all the land described in the bill; that in 1897 he and his father, T. R. Forrester, bought it together, but thereafter T. R. Forrester sold his half interest to B. M. Forrester, and the latter then owned the entire tract, but before he finished paying T. R. Forrester for his half interest, B. M. Forrester died, leaving surviving him his wife, Mary L. Forrester, their son Cary W. Forrester and D. T. Forrester, a son by a former marriage; that T. R. Forrester made a deed for his half interest to Mary L. Forrester; that B. M. Forrester had paid part of the purchase money for this half interest before his death, and that Mary L. Forrester finished paying for said half interest out of funds

belonging to the estate of B. M. Forrester, and that the deed to her from T. R. Forrester did not convey the title in said half interest to her in fee simple, but only as Trustee for the estate of B. M. Forrester, and that this title was the same that B. M. Forrester had purchased in his life time, but had not finished paying for at the time of his death; that in February, 1912, D. T. Forrester sold his interest to John D. Watts and gave him a deed for one-third interest in the lands; that John D. Watts owns one-third, and Mary L. Forrester owns one-third. The interest of C. W. Forrester is not stated in the body of the bill, but the prayer is that if Mary L. Forrester elects to take a child's part, and the property is sold, that the money arising from such sale be divided equally among Mary L. Forrester, Cary W. Forrester and John D. Watts. No fraud is charged in the bill.

Separate answers were filed by Mary L. Forrester and Cary W. Forrester. Mary L. Forrester in her answer denied that B. M. Forrester owned the lands at the time of his death; that he had paid any part of the purchase price therefor, or that he had received any deed conveying to him T. R. Forrester's interest therein; that Mary L. Forrester bought from T. R. Forrester, her father in law, his half interest in the lands after the death of her husband, B. M. Forrester, and paid therefor six hundred dollars, and assumed the debt of T. R. Forrester and B. M. Forrester for the unpaid balance on the original purchase price, and that she paid the same partly with money which she borrowed, and partly by proceeds of crops which she and her son Cary W. Forrester made on the lands; that she paid off a large indebtedness of her husband which he owed at the time of his death; and that she paid all the taxes on the property.

The answer of Cary W. Forrester denies the mate-

rial allegations of the bill, but does not state what is his interest in the lands.

*Paul Carter*, for Appellants.

*James H. Finch*, for Appellees.

BROWNE, C.J., (*after stating the facts.*)—In the consideration of this case we are confronted at the outset by the allegation in the bill "that the deed made to her did not convey the title in the said half interest to her in fee simple, but only as trustee for the estate of B. M. Forrester." This is a declaration of an express trust which the evidence not only failed to sustain, but conclusively disproved, as the deed from T. R. Forrester to M. L. Forrester which was introduced in evidence is an absolute and unconditional one in fee simple. We may consider the case, however, as predicated upon a constructive trust arising out of fraudulent acts of Mary L. Forrester, for although fraud is not charged in the bill, it is strongly contended for in appellee's brief.

In discussing the subject of constructive trusts, PERRY says: "If a person obtains the legal title to property by such arts or acts or circumstances of circumvention, imposition, or fraud, or if he obtains it by virtue of a confidential relation and influence under such circumstances that he ought not, according to the rules of equity and good conscience as administered in chancery, to hold and enjoy the beneficial interest of the property, courts of equity, in order to administer complete justice between the parties, will raise a trust by construction out of such circumstances or relations; and this trust they will fasten upon the conscience of the offending party, and will convert him into a trustee of the legal title, and order him

to hold it, or to execute the trust in such a manner as to protect the rights of the defrauded party and promote the safety and interest of society." Perry on Trusts, Sec. 166.

The law will engraft a trust upon an unconditional and absolute deed where there is fraud in the transaction, actual or constructive, as where it may be contrary to some rule established by public policy for the protection of society, and it is upon this theory that parol evidence is admissible to show that the title of the grantee under the deed is held in trust for the proper beneficiaries. "Parol evidence, however, is not favorably received by courts in any case, and they will not act upon it against written instruments, unless it is exceedingly clear and certain, and uncontradicted by other evidence." Perry on Trusts (6th Ed.) Sec. 227.

The rule as to the character of parol testimony necessary to engraft a trust upon an absolute and unconditional deed, although expressed in varying phraseology, is in effect that there must be no room for doubt.

In Lingenfelder v. Richey, 62 Pa. St. 123, it is said: "As they claimed title to the land against the express language of the deed, they were bound to show by clear and satisfactory evidence that there was a resulting trust in favor of Sparks."

In Collier v. Collier, 30 Ind. 32, the doctrine is thus laid down: "Parol evidence to establish a resulting trust in land held by an absolute conveyance must be strong and clearly relevant."

In Illinois, the proof must be "full, clear and convincing." Francis v. Rhoades, 146 Ill. 535, 35 N. E. Rep. 232; Koster v. Miller, 149 Ill. 195, 37 N. E. Rep. 46; Hogue v. Steel, 207 Ill. 340, 69 N. E. Rep. 931.

In Virginia the proof is required to be "unequivocal

and explicit, and established by clear and convincing testimony." Jesser v. Armentrout's Ex'r., 100 Va. 666, 42 S. E. Rep. 681.

In Iowa it is held there must be "more than a bare preponderance of the evidence." Cunningham v. Cunningham, 125 Iowa 681, 101 N. W. Rep. 470.

The rule is thus laid down in Utah: "To establish a resulting trust by parol evidence, in favor of one who furnishes purchase money, public policy and the safety and security of titles to real estate demand that the proof be scrutinized with great caution, and that it be clear, definite, unequivocal and conclusive. A bare preponderance of parol evidence is not sufficient. It must show the existence of the trust beyond reasonable controversy. Chambers v. Emery, 13 Utah 374, 45 Pac. Rep. 192.

The Missouri rule is similar to ours—that the "evidence to establish a resulting trust must be so clear and convincing as to exclude every reasonable doubt of the existence of such trust." Reed v. Painter, 129 Mo. 674, 31 S. W. Rep. 919. The rule in this State is very strong, and properly so, for the relaxation or modification of the strict rules of the Statute of Frauds tends to restore those practices which because of their prevalence, the statute was enacted. In order to engraft a resulting or constructive trust on an absolute and unconditional deed by parol testimony, the evidence "must be so clear, strong and unequivocal as to remove from the mind of the Chancellor every reasonable doubt as to the existence of the trust." Geter v. Simmons, 57 Fla. 423, 49 South. Rep. 131; Rogero v. Rogero, 66 Fla. 6, 62 South. Rep. 899.

The theory of the complainant's case is that there was a valid existing contract of sale between T. R. Forrester and B. M. Forrester upon which part of the consideration had been paid by the latter prior to his death, and that

Mary L. Forrester finished paying for the same with money belonging to the estate of B. M. Forrester.

There is no testimony to support this contention. There is some reference to an "arrangement" between them, but there was no attempt to prove what that arrangement was. The only effort to prove the contract relied on to establish the trust, was by the testimony of the witness Owens, as to conversations between himself and Mary L. Forrester. He was asked if he heard "Mary L. Forrester say at the time of her husband's death that her husband has arranged and contracted to buy the other half interest in the lands," and his reply was "Yes Sir. I heard her say that they owned it together, the old man and her husband." A witness replying "Yes" to a leading question about a conversation, cannot be taken as proving the statements in the question, when he follows it with a recital of what he heard, which is contrary to the implication in the question propounded. He was next asked: "Did you hear her say after the death of B. M. Forrester that he had an arrangement to buy the half interest of Thomas Forrester?" to which the witness replied: "At that time she talked about it, but afterwards she didn't." He further testified that she told him "her husband had bought it, or contracted for it; and when she bought the old man's part he went with her; that he was the one who told her to buy it, have the deed made in her name and it would all be hers; that T. R. Forrester said the papers had been made and there was not any use to change them, but before they left he agreed to make the deeds to her if she would pay it pretty soon—in a month or a short time; that nothing was said about when the papers had previously been made to or what price was to have been paid by B. M. Forrester." Mary L. Forrester testified that her husband had agreed to buy his father's interest

for $700.00. There is no testimony of any memorandum in writing between T. R. Forrester and B. M. Forrester, and none that any part of an agreed purchase price had been paid. The testimony of these witnesses about a contract is without weight. Neither of them saw the contract if it were in writing, and neither heard it expressed if it were a parol contract; and neither was able to testify as to the terms and conditions of the same. It is apparent that what they refer to as a contract, was at best a desire on the part of B. M. Forrester to buy his father's interest, and that perhaps there was some sort of an understanding between them that the son's desire might some day be consummated. This testimony is wholly inadequate to prove that a valid contract of sale existed between T. R. Forrester and B. M. Forrester at the time of the death of the latter.

It is contended, however, by the appellee that Mary L. Forrester paid for the undivided half interest which she bought from T. R. Forrester with funds belonging to the estate of B. M. Forrester, and that she held the title to the same as trustee for the heirs of B. M. Forrester. Tested by the rule in this State as to the amount of evidence necessary to engraft a trust on an absolute and unconditional deed, the testimony in this case fails utterly to come within the rule.

The testimony shows that on the death of B. M. Forrester, his wife and the son Cary W. Forrester remained on the farm and together they cultivated and improved it. Her step-son ran away before his father's death, and with the exception of one day, he remained away the rest of his life. About ten months after her husband's death, and after a crop had been made on the farm, she bought from her husband's father his undivided half interest in the property. According to her testimony she and her

son Cary cultivated part of the farm, and part was rented to tenants. Of the $600.00 she paid to T. R. Forrester for his half interest, $200.00 was made by herself and her son on the farm, and $400.00 she borrowed from Dr. Willis.

Much testimony was introduced by complainant about the horses, mules and produce sold by Mary L. Forrester which were on the place when B. M. Forrester died, the purpose of which was to raise a presumption that the money she paid to T. R. Forrester for his half interest was derived from this source, and that having paid for the land by funds derived from the sale of property owned jointly by herself and the two sons of B. M. Forrester, her title was as trustee for the benefit of herself and these two sons. A trust can not be engrafted on an absolute and unconditional deed by presumption, but the evidence "must be so clear, strong and unequivocal as to remove from the mind of the Chancellor every reasonable doubt as to the existence of the trust." The testimony for the complainant was so vague and indefinite as to what became of the proceeds of the sale of stock and produce mentioned, as hardly to have raised even a mere presumption that it was used to pay for the half interest she purchased from T. R. Forrester, and taken in connection with the testimony of Mary L. Forrester that she used these proceeds to pay the debts of the estate created prior to her husband's death, and her explanation of how she and her son worked to earn the $200.00 with which she made the first payment, and that the subsequent payments were made "with her hard earned money that she dug out of the ground" with the help of her son, and her positive statement that she did not pay for any of the land with money from the estate of B. M. Forrester, the testimony certainly was not so clear, strong and convinc-

ing as to remove even reasonable doubt, which is essential before a trust can be engrafted on an absolute and unconditional deed.   To sustain the contention of appellee that a resulting trust was shown by the vague, indefinite and hazy parol testimony introduced in support of the bill in this case, would tend to make paper titles most uncertain, if not worthless.

The decree of the Circuit Judge was also erroneous in that he decreed that Watts, the grantee from D. T. Forrester, owned an undivided one-third interest, and Cary W. Forrester owned but a one-sixth interest in the property sought to be partitioned.   No aspect of the case warrants this finding.   The interests of D. T. Forrester and C. W. Forrester are identical.   The Circuit Judge gave as the reason for making this discrimination that Cary W. Forrester "having claimed only a one-sixth interest therein, is entitled to only a one-sixth interest."

The quantity and proportionate interest of the parties will not be determined by what they claim, but by what the testimony proves they are legally entitled to.   In suits of the character of partition and accounting, the question of the interests of all the parties concerned is to be adjudicated by the court, and a mistake on the part of a claimant as to what his interest is, will not bar him from being decreed what he is legally entitled to, not even if he remain passive and abstain from making any answer.

In the case of Anderson v. Northrop, 30 Fla. 612, 12 South. Rep. 318, this court said:   "It is further contended for the appellants that the Crafts and their Trustee, DeSaussure, who did not join as complainants, but were made parties defendant in this cause, are not entitled to any share in the relief to be granted, because they complained of nothing, and asked for nothing, and the decree as to them is erroneous because thereof.

There is nothing in this contention. The Crafts are entitled, in their proper proportion, to the same relief, and in virtue of the same right, as are the active complainants herein, and were necessary and proper parties to the suit, in order to a complete determination of all interests involved; and because they remain passive and are consequently made parties defendant, does not operate as a waiver or surrender of their rights in the premises. The defendant, Andrew Anderson, is himself entitled to a one-fourth share in all the properties involved in this litigation, under the will of the elder Andrew Anderson, as a devisee under said will; because he does not claim it herein, in the same right as do the other reversioners, but on the contrary, is a defendant actively opposing and denying their claims, furnishes no reason why he should be deprived of his interests acquired through the same source as the others."

The complainant Watts does not come before this court in good faith demanding what he claims he is equitably entitled to, but rather as a speculator in the result of the suit. His deed was executed in the District of Columbia on February 27th, 1912. On December 6th, 1911, he wrote to Mary L. Forrester offering to buy her and her son's interests, and said: "So I will make you an offer of five dollars per acre for yours and his which if I understand it right would be five-sixths of the plantation." He testified that Mr. Wilson told him that Talmage, his grantor, "was entitled to one-third and he would sell me one-third and get a deed for it and would guarantee that I got one-third without any further costs to me."

It follows, therefore, that the Circuit Judge erred in decreeing that Mary L. Forrester owned an undivided one-half, that J. D. Watts owned an undivided one-third, and that Cary W. Forrester owned an undivided one-sixth

interest in the lands sought to be partitioned, and the decree is reversed and the cause remanded with directions to the Circuit Judge to enter a decree awarding to Mary L. Forrester an undivided four-sixths, and to Cary W. Forrester and John D. Watts an undivided one-sixth each in the property; and that the costs of this appeal be paid by the appellee, John D. Watts.

Decree reversed.

TAYLOR, SHACKLEFORD, WHITFIELD and ELLIS, JJ., concur.