M. R. WINTON, *Appellant,* vs. W. D. STONE, BERTIE D. STONE, his wife, and the EXCHANGE NATIONAL BANK, a corporation, *Appellees.*

145 So. 845.

En Banc.

Opinion filed January 9, 1933.

*Dickenson & Lake* for Appellant;

*Jackson, Dupree & Cone* and *C. H. Martin,* for Appellees.

PER CURIAM.—This suit was brought by appellant as complainant in the court below to impress a resulting trust on certain lands in Hillsborough County in favor of complainant, for an accounting of rents collected on said lands and money derived from the sale of portions of it, and for a receiver to take charge of and manage said property. The bill was amended, answer was filed and on final hearing, a decree was entered in favor of the defendant and the bill as amended was dismissed.

This Court is reluctant to reverse a decree of the Chancellor on a question of fact. In fine we are committed to the rule that the finding of fact of the Chancellor on conflicting evidence should ordinarily not be disturbed

upon appeal when there is ample evidence to sustain the finding, yet such finding should not be sustained merely because there is evidence that is contradictory upon which the finding may rest. Newman vs. Smith, 77 Fla. 633, 82 So. 236; Perez vs. Bank of Key West, 36 Fla. 467, 18 So. 590; Peck vs. Osteen, 37 Fla. 427, 20 So. 549; Alvarez vs. Bowden, 29 Fla. 450, 22 So. 718; Ross & Co. vs. Walker, 44 Fla. 704, 32 So. 934; Hoard vs. Sheffield, 73 Fla. 358, 74 So. 488; McGill vs. Chappellee, 71 Fla. 479, 71 So. 836.

In this case, the pleadings were not clear and a careful reading of the evidence convinces us that substantial justice was not done. The final decree is not required by the evidence considered as a whole and in view of the entire record the decree is reversed with directions to reinstate the bill and to permit amendments if desired in order that the cause may be clearly presented for determination.

BUFORD, C.J., AND WHITFIELD, TERRELL AND DAVIS, J.J., concur.

ELLIS AND BROWN, J.J., dissent.

ELLIS, J. (Dissenting).—M. R. Winton sought by bill in chancery against W. D. Stone and his wife to declare a resulting trust in certain lots in Hillsborough County held in the name of Stone to be for complainant's benefit; for an accounting for rents collected by Stone on leases of the property and money derived from the sale of portions of it, and for a receiver to take charge of and manage the property and general relief.

The bill was filed July 12, 1927.

An amendment of the bill was filed a month later in which The Exchange National Bank was made a party and in which it was alleged that certain promissory notes executed by Winton in favor of Stone were held by the bank for collection and to which the prayer was added that

the bank be restrained from redelivering the notes to Stone and from hypothecating them in any manner.

The case made by the two bills in chancery rests upon the following state of facts as alleged in the two bills; prior to and up to the time the alleged business transaction between Winton and Stone out of which this litigation arose, October 17, 1925, Winton was a physician and surgeon and Stone was engaged in real estate business. The personal relations of the two men were most friendly and they "had had numerous business dealings together." In view of which, seemingly, the allegation is made that Winton "had confidence in and relied upon any statement or representation made him by the said W. D. Stone with whom he had transacted business for a number of years."

From that circumstance alone Winton can obtain little or no comfort in so far as it constitutes an element for consideration in the relief sought by Winton in the case developed by the pleadings, because however friendly the personal relations of parties to a business transaction may be, they trade at "arms length" unless in the transaction itself there is created something of a fiduciary or trust relation. See Parramore v. Hampton, 55 Fla. 672, 45 South. Rep. 992; Patrick v. Kirkland, 53 Fla. 768, 43 South. Rep. 969, 125 Am. St. Rep. 1096, 12 Ann. Cas. 540.

The case of Quinn v. Phipps, 93 Fla. 805, 113 South. Rep. 419, 54 A. L. R. 773, is one in which Mr. Justice Terrell in an able opinion elucidates the point. The fiduciary relation or the duty which is owed to another as the basis of the trust may be raised by representations, conduct and the like that have been relied upon by another under such circumstances as create an equitable estoppel on one to pursue thereafter an opposite course for his own advantage. See 26 R. C. L. 1235; Edwards

v. Culberson, 111 N. C. 342, 16 S. E. Rep. 233, 18 L. R. A. 204.

The theory of the bills must be taken to rest upon conditions creating a trust *ex maleficio*. Not merely upon the fact that the complainant knew the defendant and believed him to be a man of honor.

The allegations in substance are that Stone assumed to purchase for himself and Winton certain lands in Hillsborough County, which they were to hold in equal shares and each to contribute one-half the purchase price, which Stone said was twenty-five thousand dollars. That Stone made the proposition on or about October 17, 1925. Winton accepted, and on that date gave Stone five hundred dollars; on October 19th, twenty-five hundred dollars more, on February 20th, 1926, three thousand dollars, on March 3rd, 1926, five hundred dollars, on April 14th, two hundred and fifty dollars, and on August 16th, nine hundred and forty dollars, making a total of seven thousand six hundred and ninety dollars. That in addition to these payments Winton executed and delivered to Stone three promissory notes in equal amounts aggregating ten thousand dollars, all dated February 26, 1926, one payable one year after date, another two years after date and the third three years after date. The notes were alleged to be in part payment of the purchase price of the land and are the notes alleged to be held by the bank for collection for Stone. The bill alleges that six hundred and ninety dollars of the cash paid to Stone were paid "for other matters as represented by said W. D. Stone in connection with the purchase of the property" and in addition to the amount of $14,000.00 that was to be paid to the owners."

It appears from these allegations that the price at which the property was to be bought was twenty-five thousand dollars, fourteen thousand dollars to be paid

cash, six hundred and ninety dollars in addition, and Winton paid seven thousand six hundred and ninety dollars and his notes for ten thousand, making a total of seventeen thousand six hundred and ninety dollars. It is alleged that Stone acquired the property from Louis Fletcher by quit-claim deed in January, 1926, taking the title in his own name, and the deed was duly recorded. The original bill alleges that the property only cost Stone five thousand two hundred and fifty dollars, and in the amendment it is alleged that Stone purchased it for seven thousand dollars. It is alleged that Stone's scheme was to collect the notes from Winton, reimburse himself for the seven thousand dollars paid for the land, utilize the balance of three thousand for his own personal use and convey to the complainant a half interest in the land.

The original bill alleges that on June 13, 1927, Stone and wife executed a deed of conveyance in favor of Winton for an undivided half interest in a part of the property omitting from the deed lots numbered nine and ten of block two Futch's Subdivision, and demanded of Winton the payment of "the balance of one-half" of twenty-five thousand dollars which the property was represented by Stone to cost, and one-half of which Winton was by his agreement with Stone to pay to him. It is alleged however that prior to that time, June 13, 1927, Winton had discovered Stone's deceitful conduct; that the property had only cost five thousand two hundred and fifty dollars, and that Stone intended to appropriate the remainder amounting to seven thousand two hundred and fifty dollars to his own use. It is alleged that Winton refused to pay the balance and Stone declined to deliver the deed.

It is alleged that Stone has sold part of the property and has collected rents on the portions leased.

It is difficult to reconcile the allegations in the original bill and the amendment. Taken together they are not clear in some particulars. On June 13, 1927, when Stone tendered the deed for only a part of the property, Winton had about a year before paid Stone seven thousand six hundred and ninety dollars and more than a year and three months before giving him promissory notes aggregating ten thousand dollars. Which amounted to five thousand one hundred and ninety dollars more than one-half the cost of the property as represented by Stone. That much more than Winton under his version of the transaction was required to pay. Stone acquired the property from Fletcher in January, 1926. The deed was recorded during the same month. The consideration expressed was ten dollars and other valuable considerations, yet after that date Winton paid Stone four thousand six hundred and ninety dollars and executed his notes for ten thousand which aggregated two thousand one hundred and ninety dollars more than one-half of the twenty-five thousand supposed to have been paid for the land.

If Winton and Stone had agreed to buy the land together as Winton alleged at the price and on the terms alleged, it is by no means clear why he should have paid to Stone in cash seven thousand six hundred and ninety dollars and bound himself by notes to pay ten thousand dollars more. When he gave the notes he had already paid six thousand dollars in checks which made three thousand five hundred dollars more than his half of the purchase price of the land and then afterwards paid in cash sixteen hundred and ninety dollars more. These payments were in excess of what he had assumed to pay according to the alleged understanding between him and Stone, and considering the due dates of the notes extended over a period of three years and several months. When Stone tendered the deed for a half interest he had already

received in cash and Winton's obligations to pay much more than the latter owed, if the allegations of the bill are to be accepted. No explanation is given in the bill for that attitude of Stone. So the bill is unclear, the details of the alleged transaction so involved and Winton's payments so unbusinesslike and irregular that it is difficult to ascertain the theory on which he seeks relief. It seems to rest upon an alleged partnership relation, or the relation of principal and agent. Upon either theory the complainant would be entitled to relief if the allegations of the bill were established. There was a demurrer to the bill which was overruled.

Stone and wife answered. The allegations in the amendment to the bill contained in the first, second and fourth paragraphs were admitted. They related to the names and residence of the parties, the execution of the notes by Winton and their possession by the bank for collection. The allegations of the third paragraph relating to the purchase of the property by Stone for seven thousand dollars and the alleged false representations by him by means of which he obtained the notes from Winton were denied. They admit obtaining the deed from Fletcher, denied all allegations tending to show either a partnership relation or one of principal and agent, admitted the sale of lots numbered nine and ten of Futch's Subdivision and averred that it was with Winton's knowledge and consent. It is averred that Stone purchased the property in September, 1925, from L. M. Turner, a court commissioner, and the deed was duly recorded in October of that year. That Stone supplied all of the purchase money and the property so acquired was his exclusively. It is averred that after Stone acquired the property Winton applied to Stone for the purchase of a half interest in it. Stone declined to state what the property cost him, but did agree to sell to Winton a half

interest for thirteen thousand dollars. Winton agreed to this, the terms being three thousand dollars cash and notes for ten thousand. Winton then gave Stone his checks for five hundred dollars and twenty-five hundred dollars respectively. Those checks were the payments of October 17 and 19th, 1925, apparently. The notes for ten thousand dollars were then executed by Winton in February, 1926.

It is averred that while this transaction was pending Stone was maintaining a suit to quiet title to the property of which Winton had full information, which averment is made in explanation of why Stone did not convey to Winton an undivided half interest in the property before June of 1927. The sale of lots nine and ten brought fourteen hundred dollars and Stone had collected rents for which he had accounted to Winton.

It is averred that Winton declined to accept the deed tendered by Stone, preferring that Stone retain the title in his own name rather than accept the deed and execute a mortgage upon his interest to secure the payment of the notes, explaining that such method of holding the property and reporting the profit when sold in his own name would enable Winton to evade something of the Federal surtax to which he would be subjected if the profits from the real estate transaction were reported in his own name.

This lengthy statement of the substance of bill and answer seems necessary to a clearer understanding of the issues on which the parties proceeded to a hearing. Reduced to a simple statement the issue was: first, whether Stone acted as agent for Winton in the purchase of the property, or, second, whether Winton and Stone entered into a kind of partnership or joint adventure in the acquisition of the lots.

The burden of establishing the one proposition or the

other had to be carried under our system of jurisprudence by the complainant Winton in order to establish a resulting or constructive trust in Winton's favor, or an accounting on the ground of a partnership relation.

The doctrine is well established in this State that while a resulting trust may be established in this State by parol, the evidence to establish it must be so clear, strong and unequivocal as to remove from the mind of the chancellor every reasonable doubt as to the existence of the trust. See Loftin v. Sterrett, 23 Fla. 565, 2 South. Rep. 837; Geter v. Simmons, 57 Fla. 423, 49 South. Rep. 131; Johnston v. Sherehouse, 61 Fla. 647, 54 South. Rep. 892; Rogero v. Rogero, 66 Fla. 6, 62 South. Rep. 899; McGill v. Chappellee, 71 Fla. 479, 71 South. Rep. 836; Yellow Pine Lumber Co. v. Jernigan, 56 Fla. 891, 47 South. Rep. 945; Hill v. Beacham, 79 Fla. 430, 85 South. Rep. 147.

Where there is no agency or fiduciary relation, and the complainant did not furnish any purchase money nor have any legal interest or contract rights in the property purchased by the defendant, no constructive or resulting trust is shown. Parramore v. Hampton, supra; Leeper v. Gorman, 100 Fla. 128, 128 South. Rep. 876; Perry on Trusts (6th ed.) Sec. 227. See also Forrester v. Watts, 73 Fla. 514, 74 South. Rep. 519. The able opinion in this latter case by Mr. Chief Justice Browne is most valuable.

An examination of the evidence by us fails to produce in the mind of the court the conviction that the Chancellor erred in rendering the decree from which Winton appealed.

The fact that Stone purchased the property before there was any agreement between him and Winton of any sort in relation to it, and that Stone paid for it with his own funds and that Winton had no right or interest of either

an equitable or legal nature is amply supported by the evidence. That subsequently to such purchase Stone agreed to sell to Winton an undivided half interest is also a fact which the Chancellor was fully justified in finding from the evidence.

The Chancellor found that Winton pursuant to his agreement to purchase paid part of the consideration in cash, three thousand dollars, on February 26, 1926. This finding is in conflict with the averments of the answer as it admits that such sum was paid on October 17th and 19th, 1925, in two checks, one for twenty-five hundred dollars, and the other for five hundred.

The fact is immaterial however as Stone had purchased this property and paid for it before that date. The quit-claim deed from Fletcher was merely in clearing the title.

We are unable to discover from the evidence any justification for appellant's contention that Stone acted in the transaction either as Winton's agent, or that there was in the relation of the parties anything of a partnership relation. Stone acknowledges that he agreed to sell to Winton an undivided half interest for a certain sum which Winton acknowledges he agreed to pay. The difference between their statements in this matter being about five hundred dollars, but the allegation of Winton's bill in reality confirms the contention of Stone that the price Winton was to have paid was thirteen thousand dollars. There is no evidence from which the Chancellor could have reasonably found that there was anything of deceit, fraud or double dealing on Stone's part in the transaction. It is not material that Stone may have been making a profit in the transaction, nor do the friendly relations and mutual confidence of the parties born of their social contacts impart to Stone's profit taking abilities anything of fraud or deceit, nor preclude him from

representing to his friend that the property cost the sum which the latter thought at the time it was worth.

Friendship and the mutual confidence which it brings is a beautiful relation, but business transactions may nevertheless be carried on at arms length between two friends in which one puts his judgment as to property values the subject matter of a trade against that of the other.

The decree dismissing the bill is affirmed.

BROWN, J. (Concurring specially).—I concur in the able opinion of Mr. Justice Ellis except in one particular; that is the observation that the friendly relations existing between the parties could not have precluded Stone from representing to Winton that the property cost the sum which the latter thought at the time it was worth. As I understand the testimony, Stone denied making such representation. If the testimony had established the allegation that Stone occupied toward Winton the position of a joint purchaser, it would have been his duty fully and honestly to have disclosed the true purchase price of the property to be acquired. Willis v. Fowler, 136 So. 358. The chancellor's finding that the parties were not joint purchasers is not without foundation in the testimony, and I agree that his conclusions should not be disturbed. As the testimony was in conflict on the question as to whether Stone made any misrepresentation to Winton as to the cost to him of the property, I do not consider it necessary for this Court to determine whether such misrepresentation, if made, would have been without effect on the rights of the complainant. While strictly fiduciary relations may not have been shown, the long and intimate friendship between the parties is, I think, a factor which should be considered in this connection, if we were called upon to decide the point.