W. F. JONES v. AUGUSTA JONES.

161 So. 836.
Opinion Filed May 21, 1935.
Rehearing Denied June 19, 1935.

*George E. Turner* and *John A. Rush,* for Appellant;

*Charles A. Powers* and *Charles A. Powers, Jr.,* for Appellee.

Davis, J.—In this case a Special Master found and reported to the court that at the time the defendant and cross complainant below, Augusta Jones, married the complainant and cross defendant below, W. F. Jones, she had a living husband and that by fraud and deception practiced upon the intended husband, that said Augusta Jones induced said W. F. Jones to marry her and that thereupon said W. F. Jones did marry the said Augusta Jones without any knowledge of the fact that she then had a living husband. The Master recommended a decree of annulment for the husband, that the child of said marriage, Charlotte May Jones, a female minor, should be awarded to the mother with an allowance of a proper sum of money for the support, maintenance and education of the child, and that $10.00 a week should be allowed and paid to the defendant by the complainant for that purpose and that solicitor's fees in the sum of $100.00 should be decreed against said W. F. Jones.

Upon exceptions to the Master's report, the Chancellor reversed the Special Master in part and entered in lieu of the findings of the Special Master his own conclusions as follows:

"* * * that the equities of this cause are with the defendant and against the plaintiff; that in a case of this nature where the annulment of the marriage is sought and where, should the court decree annulment thereof, the result would be to declare illegitimate the issue of said marriage, the fact that there is issue is an important consideration, and no such decree should be entered with such un-

fortunate result, until the facts as shown by the record and the law make such a decree just and equitable; that the policy of the law is to uphold rather than annul, or dissolve, the marriage relation; that there is a presumption in favor of marriage and legitimacy of offspring; that where it is shown by the evidence that prior to the marriage of the parties there was a former marriage of one of the parties, where the present relation has been honestly entered into and not meretriciously, the law will presume that the former spouse is dead, or that there has been a divorce and a dissolution of such former matrimonial relation; that the burden of proof is upon the plaintiff, the party assailing the validity of the second marriage, to show its invalidity even to the extent of proving a negative; that the plaintiff and the defendant married, lived together as man and wife, and a child was begotten intending a lawful marriage and not a meretricious relationship; that the evidence of the plaintiff to show the invalidity of said second marriage, to-wit, the lack of knowledge of Alice McLaughlin, the sister of the former spouse of the defendant, as to any divorce of said former spouse and the certificate of his death in 1928, is insufficient to overcome the presumption of the validity of the second marriage and legitimacy of the offspring thereof, as to do so would permit a mere possible inference to overcome a presumption; that to constitute the fraud charged by plaintiff and erroneously found by the Special Master, the defendant must have known that her former husband was living and not divorced at the time of her second marriage, or must have been possessed of knowledge of facts sufficient to have put a person of ordinary and reasonable prudence upon notice of such facts, and with such knowledge, she must have, by word or act, represented to the plaintiff that she was competent to contract marriage, and

plaintiff must have married her in reliance upon such representation and without knowledge, or reasonable means of knowledge, to the contrary; that, after a careful examination by the court of the evidence and giving to the Special Master's findings of fact the weight that would be given to the verdict of a petit jury, the Special Master erred in making his findings of fact upon which he based his finding of fraud of the defendant and that the marriage of the parties should be annulled; that the evidence of fraud is not clear nor convincing and is insufficient to sustain such a finding; that it would be unjust and inequitable under the evidence to permit the plaintiff who invoked the law to enter into the marriage relation and who received the fruits of such relation and thereafter begot a child as the result thereof to now invoke the law for the purpose of the annulment of such relation and thus render his child illegitimate; that the marriage of the parties herein is valid; that the exceptions of the parties as they are consistent with this decree should be sustained and as they are inconsistent therewith should be overruled; that the original and supplemental bills of complaint herein should be dismissed; that the defendant is entitled to the relief as prayed for in and by her prayer in her answers for affirmative relief and herein granted, * * *"

The evidence to sustain the Special Master's findings of fraud and deception practiced on the part of Augusta Jones in inducing said W. F. Jones to marry her in the belief that she was unmarried at the time, is so clear, certain and convincing that no other conclusion can be reasonably reached concerning the same, except that the decision of the Chancellor in refusing to accept and approve such findings was clearly wrong, and should not be followed by this Court, even in view of the strong presumption always attaching

here to a Chancellor's findings arrived at on the basis of evidence that is somewhat in conflict. See Winton v. Stone, 107 Fla. 636, 145 Sou. Rep. 845, and cases cited therein.

The transcript concerning the present controversy reveals the unusual fact that the suit below was originally instituted by the appellant husband against the appellee wife seeking a divorce, as well as custody of his daughter, on the statutory grounds of the wife's extreme cruelty and ungovernable temper (Section 4983 C. G. L., 3191. R. C. S.). While the suit was pending in the Circuit Court undisposed of, the complainant husband discovered for the first time that the defendant, his supposed wife, already had a living husband from which she was undivorced at the time of his marriage to the defendant in 1918. Such being the situation, he thereupon filed a supplemental bill for dissolution of the identical marriage, but in which, after setting up the prior undissolved marirage of his wife, with one McLaughlin, who had later died in 1928, he prayed for an annulment of his 1918 marriage to Augusta Jones instead of a divorce as prayed for in his original bill for divorce from her.

The wife, Augusta Jones, answered both the original bill and the supplemental bill. In her answers she prayed for affirmative relief in the nature of support for herself and in addition to the monetary relief, sought the custody of her daughter, Charlotte May Jones. The final decree from which this appeal was taken was a decree by which the Chancellor dismissed both bills of the hsuband and granted in its entirety the affirmative relief sought by the wife.

In divorce matters modern civilization strongly condemns the harsh doctrine of *ab initio* sentences of nullity. As a consequence marriages are considered as being either void or voidable, depending upon the circumstances involved. A marriage is considered voidable rather than void, though

prohibited by law, when it is possible for the parties to subsequently ratify it when there has been removed a disabling or voiding impediment which was unknown to both parties at the time the invalid marriage was originally contracted, especially where no public policy pertaining to the situation appears to present any obstacle thereto superior to all considerations of private utility. Harrison v. State, 22 Md. 468, 85 Am. Dec. 658; State v. Yoder, 113 Minn. 503, 130 N. W. Rep. 10, L. R. A. (N. S.) 1916-C 686 and note; Love v. Love, 42 Okla. 478, 142 Pac. Rep. 305, L. R. A. (N. S.) 1915-E 109; note 79 A. S. 373.

When in 1918, pursuant to a formal marriage license and in due form, W. F. Jones married Augusta Jones at Jacksonville, Florida, in ignorance of the fact (known to her but unknown to him) that at the time said Augusta Jones had a husband by a prior marriage then living and undivorced, a presumption in favor of the validity of such second marriage immediately arose from the act of performance of the second marriage ceremony, which presumption was sufficient in the eyes of the law to prevail over the presumption of the continuance of life of Augusta Jones' former spouse and even over the presumed continuance of the former marriage undissolved, neither presumption being overthrown by proof of extraneous facts. Under such presumptions of law was born the child, Charlotte May Jones, whose legitimacy has been saved in the decree of the court below solely by reason of the application to this case of the presumptions of law above mentioned. See Murchison v. Green, 128 Ga. 339, 57 S. E. Rep. 709 11 L. R. A. (N. S.) 702, for the reasons for indulgence in the presumptions referred to.

In the present case the evidence shows that all legal presumptions have been overthrown in fact in this litigation.

But this litigation did not arise until long after the birth of an innocent child to its litigating parents, at least one of whom (the father) is as innocent of intentional wrong-doing as is the child itself. The last marriage was contracted in the State of Florida pursuant to every form of law, including the procurement of a proper marriage license, that the Florida law requires. As opposed to the presumed validity of the 1918 Florida marriage is the incontrovertible proof of an undissolved Pennsylvania marriage performed in 1909 under which neither of the parties have cohabited since 1912, long prior to the date upon which the Florida marriage was performed. The husband contracted the Florida marriage innocently and in the best of faith. The child born as the result of that marriage is obviously guilt-less of any wrong-doing on its parents' part. To uphold the decree of the Chancellor as entered, is to disregard in the child's interest the husband's established legal right to have annulled a technically bigamous marriage in order to avoid declaring the child of that marriage a bastard and to obviate the branding of the wife and mother as a con-cubine.

Had no countervailing proof been adduced in the present case to judicially overthrow the presumption in favor of the validity of the formal Florida mariage as the one last performed, a presumption of law in favor of its validity would have to be given effect to sustain it. On the same principle, the cohabitation that has occurred between the parties since removal of the impediment to the prior Penn-sylvania marriage through the former husband's death in 1928, as well as the curative *prima facie* effect of the di-vorce decree that Mrs. Jones secretly obtained from her former spouse by a decree entered in Duval County on Au-gust 16, 1929, will raise and support the presumption of a

valid common law marital status coming into being and existing at all times since the legal impediment first ceased to exist. See: Smith v. Reed, 145 Ga. 724, 89 S. E. Rep. 815, L. R. A. (N. S.) 1917-A 492.

The marriage of a man and woman, where one of them has a husband or wife by a prior marriage, who is then living and undivorced, is generally held to be absolutely void, and not merely voidable, and being a nullity, no judicial decree is ordinarily necessary to avoid same. But where an absolutely void bigamous marriage is innocently contracted by one of the parties in ignorance of the existing impediment, and as a result of fraud and deceit practiced upon him by the opposite party the fact that such void marriage has subsequently ripened into a presumptively valid common law marriage through continued cohabitation of the parties after the disbarring prior marriage has been dissolved by death, should not bar or preclude the innocent party to such fraud from treating the resultant common law marriage as one that is voidable within a reasonable time after discovery of the fraud practiced upon him, and thereupon having a judicial annulment of same, such as was sought in this case.

The annulment of the now existing *voidable* common law marriage status cannot bastardize the child, Charlotte May Jones, who was born prior to any decree of annulment, since the judicial decree setting aside a merely voidable marriage status does not operate retrospectively as against the legitimacy of children born to the parties where such children would have been considered legitimate under the annulled voidable common law marriage prior to any decree of dissolution of same, had such annulment decree never been rendered. See authorities hereinbefore cited. Section 5880 C. G. L. 3961, R. G. S.

The marital status of appellant and appellee being shown to be legally voidable although not absolutely void at the time of the institution of the suit below, and appellant not having been guilty of *laches,* nor become equitably barred by estoppel from asserting his rights and advancing his suit for annulment of the voidable marital status on the ground of the fraud and deceit that had originally been practiced upon him by the wife, Augusta Jones, in occasioning the inception of such present common law marital status by fraudulently procuring a marriage and cohabitation void to begin with, a decree should be entered in favor of appellant, W. F. Jones, annulling his marital status with Augusta Jones and adjudging it to be a voidable one for the reasons hereinbefore pointed out, and granting such further relief incident thereto as the equities of the case may appear to require for the benefit of the child, Charlotte May Jones.

Reversed for appropriate proceedings.

WHITFIELD, C. J., and ELLIS, TERRELL and BUFORD, J. J., concur.