## BALLO v. MATHIAS.
No. 60-2693-E.

Circuit Court, Duval County.

March 13, 1961.

Lanas Troxler and Coakley Taylor, both of Jacksonville, for plaintiff.

Walter G. Arnold, Jacksonville, for defendant.

WILLIAM L. DURDEN, Circuit Judge.

This is an action brought under the provisions of chapter 742, Florida Statutes, relating to bastardy proceedings. It is before the court upon motions for summary final decree filed by the plaintiff and by the defendant.

There are various depositions, interrogatories, answers to interrogatories and affidavits, together with documentary evidence identified at the depositions before the court and which have been considered.

Section 742.011 provides that—"any unmarried woman, who shall be pregnant or delivered of a bastard child, may bring proceedings . . . " This law was amended to read in its present form by section 1 of chapter 26949 of the Laws of Florida, 1951. Prior to that time the predecessor statute commenced—"when any single woman who shall be pregnant . . . "

It appears clear from the wording of the statute itself that such a proceeding may be instituted and maintained only by an unmarried, or, said another way, a single woman.

The Supreme Court of Florida so held in Bishop v. State, 136 Fla. 268, 186 So. 413, wherein the court stated—"Under this statute no one but a single woman may file a complaint of this nature."

The latest case on this subject seems to be Sanders v. Yancey, Second District Court of Appeal of Florida, 122 So. 2d 202. In that case, most of the relevant Florida decisions were reviewed and in conclusion the court stated—"After a careful consideration of the cases cited herein along with the dictates of sound moral public policy, we conclude the rule in Florida to be that a mother is not permitted to have a child which has been conceived in wedlock declared to be illegitimate. Children which are conceived and born in lawful wedlock are legitimate."

The conclusion of the courts of Florida is well stated in 4 Fla. Jur., Bastards, § 11, p. 276. This section is devoted to a discussion of by whom such an action is maintainable. It is there said—"It is the mother or the expectant mother who is usually authorized to invoke the statute relating to bastardy proceedings. The Florida statute authorizes 'any unmarried woman' who shall be pregnant or delivered of a bastard child, to bring proceedings in the circuit court, in chancery, to determine the paternity of the child."

There is further comment in § 6, relating to the rights and duties of parents, wherein it is said at page 272—"Where a child is born in wedlock, the reputed father has the right to contest

the parentage. However, by reason of the interest which the state has in the marital status of persons and the beneficial interest falling to the state as an organized society for well-ordered and satisfactory home conditions, as a matter of public policy a mother has no right to contest or repudiate the legitimacy of a child born during wedlock."

It is further clear that the complaint must allege that the plaintiff is a single or unmarried woman. C. T. v. State, 21 Fla. 171; 4 Fla. Jur., Bastards, § 14, p. 274. Having established that under the law such action can only be instituted and maintained by a single or unmarried woman and that the complaint must allege this status on the part of the plaintiff, we turn now to a consideration of the pleadings and evidence that is in the file and before the court.

In compliance with the statutory requirements, the plaintiff's complaint herein reads in part as follows—"that plaintiff is an unmarried woman, and is the mother of Andrea Mathias, born of the plaintiff on June 4, 1959, as a result of a sexual relation with the defendant, and plaintiff was so unmarried on June 4, 1959, and for 12 months prior thereto."

It is proven and admitted that the plaintiff's maiden name was Audrey Lorraine Ballo; that she went through a ceremonial marriage with one Richard Francis Patterson in Beacon, New York, on December 24, 1955.

It is further established, however, that the plaintiff and Mr. Patterson became involved in some sort of a "big fight" after the reception and that they never commenced living together as husband and wife and that the plaintiff has never engaged in sexual intercourse with this Mr. Patterson. It is clearly established by the evidence that she met the defendant in Jacksonville in the month of June, 1958, and although she knew he was married, commenced having a series of acts of sexual intercourse beginning in September and on up to and through the end of the calendar year of 1958.

It is further established that the child was born of the plaintiff on June 4, 1959. It is also the uncontroverted testimony of the plaintiff that although she was 26 years of age and had been through a ceremonial marriage, she was at the time of her first sexual engagement with the defendant, a virgin.

It is also established that the plaintiff instituted an action for annulment of marriage in the name of Audrey Ballo Patterson against Richard Francis Patterson in the Supreme Court of the State of New York and in the County of Duchess.

It appears from the pleadings of that case that the defendant, Patterson, was personally served on November 23, 1959, and that an interlocutory default judgment was entered therein, which under the rules of procedure of that jurisdiction became final on April 28, 1960. This was nearly a year after the child was born. It should be noted, however, that by its very terms, this interlocutory judgment stated that it was "ineffectual to annul such marriage and that any marriage contracted by either party thereto prior to the entry of final judgment is absolutely void and bigamous." The terms of this decree are set out because in the consideration of the present proceeding, it appears that it should be determined whether or not the New York annulment by its terms or law applicable thereto, rendered the ceremonial marriage void ab initio or held that such marriage was voidable only and therefore valid until annuled or otherwise terminated.

It appears to be settled that some marriages are void and others only voidable. Here the grounds of the annulment were not such as rendered the parties incapable of performing a valid marriage and arose only after the ceremony. Therefore, such marriage was voidable only both in law and by the very terms of the decree of annulment, Gaines v. Jacobsen, 124 N. E. 2d 290.

A decree of annulment based on a ground which makes a marriage voidable but not void takes effect as of the date of the decree and it is accordingly held that such a decree does not have the effect of bastardizing a child who was born prior to the date of the decree. Jones v. Jones, 119 Fla. 824, 161 So. 836; 10 Fla. Jur., Divorce, Separation and Annulment, § 307, p. 718. See also the case of Ruff's Estate, 159 Fla. 777, 32 So. 2d 840, wherein it is stated that as the marriage therein considered was not void but only voidable—"the decree of annulment was effective as of the time when entered, and not ab initio."

From this discussion of the facts, the conclusion which must be reached may, at first blush, appear harsh. It is equally obvious, however, that the law controlling this case is clear and unmistakable and the conclusion must be and is reached that a summary final decree should be entered in favor of the defendant.

The court finds that there is no genuine issue as to any material fact and the defendant is entitled to a summary judgment as a matter of law. It is therefore ordered and adjudged that the defendant's motion for summary judgment is granted, that the plaintiff have and recover nothing by her suit, that the defendant, William Sylvester Mathias, Jr., go hence without day, and that defendant recover his costs in this behalf expended and have execution therefor.