PER CURIAM.
The appellant is a supplier and distributor of water to the public. It serves customers within the three political jurisdictions of South Miami, Coral Gables and unincorporated Dade County. It brought a complaint in the circuit court against the City of South Miami seeking an injunction to prohibit that City from enforcing the provisions of its Ordinance 40S, whereby the water rates of the plaintiff corporation were reduced within the city. After extensive hearings, both before a special master and before the court, the chancellor entered a fianl decree in which he denied plaintiff’s prayer for relief. This appeal followed.
Plaintiff’s complaint alleged that the ordinance was null and void in that it deprived plaintiff of its property without due process of law and deprived plaintiff of equal protection of the law. It was urged that the net earnings and rate of return to the plaintiff resulting from the reduction of plaintiff’s rates by Ordinance No. 405 would be less than a fair return upon the value of plaintiff’s property used and useful in supplying service within the City of South Miami. Defendants’ answer admitted the adoption of the ordinance, but denied plaintiff’s charges as to its invalidity and unconstitutionality.
The chancellor referred the cause to a special master in chancery to take testimony and to report his conclusions, findings and recommendations to the court. The special master found that in testing the validity of the ordinance, the court should consider only that portion of the water system in South Miami, and recommended that if *847 so considered, the ordinance be declared to be unreasonable, confiscatory, illegal ■ and void. In arriving at his recommendation, he set forth the following statistics:
“However, since your Special Master has taken the position that Ordinance No. 40S must stand or fall upon its effect on the South Miami rates separate and apart from the remainder of the Plaintiff’s system, a rate báse lias been reconstructed by your Special Master following the methods employed by witnesses JORDAN and ROMIG, but restricted to South Miami as a separate unit, as follows:
Net plant $409,965.00
Materials and supplies $ 6,801.00
Working Capital 7,434.00 14,235.00
$424,200.00
Less:
Customers’ advances 29,129.00
Customers’ deposits 16,015.00
50% Income Tax 2,739.00 47,883.00
$376,317.00
Net operating income $ 26,532.00
Depreciation 8,278.00
Income Tax 5,478.00 13,756.00
$ 12,776.00
RETURN 3.39%
“The above does not give effect to the provisions of Ordinance No. 405. Using the figures of Exhibit ‘J’ to show a loss of revenue under the subject ordinance of $4,844.18 less provision for Federal Income Tax of $2,518.97, leaving a net loss of revenue of $2,325.21, we find the following result:
Net plant $409,965.00
Materials and supplies $ 6,801.00
Working Capital 7,434.00 14,235.00
$424,200.00
Less:
Customers’ advances 29,129.00
Customers’ deposits 16,015.00
•50% Income Tax 2,739,00 47,883.00
$376,317.00
Net operating income $ 26,532.00
Depreciation 8,278.00
Income Tax 5,478.00 13,756.00
NET INCOME 12,776.00
LESS net loss in revenue 2,325.00
$ 10,451.00
RETURN 2.78%
*848 * * * * * *
“Obviously, the experience of using South Miami as a separate unit results in a rate of return which is unreasonable and confiscatory.”
The special master also computed the rate of return which the ordinance would establish if a system-wide basis were used:
“Should the Court disagree with its Special Master and hold that the effect of Ordinance No. 405 should be tested on a system-wide basis, then, and in such an event, it is the opinion of your Special Master that the 5.90’% return illustrated on Exhibit ‘J’ is fair and reasonable and Ordinance No. 405 should be held to be valid, reasonable and effective.”
The defendant-City’s exceptions to this special master’s report were primarily directed to his finding that the plaintiff’s system in South Miami should be treated as a separate unit for determining the reasonableness of the rates prescribed by Ordinance No. 405. The plaintiff-water company also filed exceptions to the special master’s report, but its exceptions were not to his recommendations. The plaintiff sought to preserve its position as to the rate fixed in the event the court should decline to follow the special master.[1]
The court directed the parties to present memoranda of fact upon the issue of whether or not the rates fixed by the City Council of South Miami in its ordinance were reasonable, just, and nondiscriminating as a part of, or in relation to, the system rate of the plaintiff water company, including areas beyond the jurisdictions of the City of South Miami. After hearings before the court on the exceptions of both parties, the court entered its decree overruling the master’s finding that the reasonableness of the rates prescribed by Ordinance No. 405 should be determined with respect to plaintiff’s system within the City of South Miami as a separate unit. Further, the court found that the rates prescribed by the City of South Miami for plaintiff’s customers within its boundaries were not unreasonable or confiscatory.[2]
*849 It is thus apparent that the fundamental question involved herein is whether the trial judge erred as a matter of law when he refused to accept the legal conclusion reported by the master concerning the determination of rates with reference to the water company’s system within the City of South Miami as a separate unit. The Chancellor held that the City of South Miami could determine the reasonableness of plaintiff’s rates by whatever method it chose, and he would only determine whether the rates fixed were reasonable and non-confiscatory.
The appellant-water company urges that the chancellor erred as a matter of law when he failed to enjoin the enforcement of an ordinance which established a rate based upon a system-wide rather than a unit-wide analysis of its earnings. It maintains that the rule is established in Florida that regulatory bodies must follow the regulatory unit method of establishing rates and make such regulations as are necessary to give just compensation on local business.
It should be noted that this and similar questions have presented difficulties in many jurisdictions. See cases collected at 4 A.L. R.2d 595; 94 C.J.S. Waters § 293 (1956); also 41 Yale L.J. 912 (1932); 18 Iowa L. Rev. 354 (1933); 32 Mich.L.Rev. 289 (1934). Further, it may parenthetically be observed that the system-wide unit would certainly be the only proper unit if the regulatory body were able to determine the rate for the entire system. Of course, this situation does not exist here because the Service of the Consumer’s Water Company extends into two other governmental areas.
It is apparent that the customers in a large city are more numerous and closely grouped than in a rural area. As previously *850 noted, the Consumer’s Water Company serves not only the City of South Miami but the more populous City of Coral Gables. It also serves some portion of the unincorporated area of Dade County. Extended to its logical result, the position of the water company is that each area ought to pay a rate determined by the amount of business done by the company wholly within the area, the cost of doing such local business, and the fair value of the property used in conducting it. What would be a reasonable charge for service in South Miami would not be so in Coral Gables, and the public in the unincorporated areas would be called upon to bear a still different charge.
We are not called upon to decide if the determination of a rate base must always be upon a system-wide unit, but only whether it was reversible error for the circuit court to approve a rate reached by using such a unit under the circumstances presented by this record. The essence of the trial judge’s decision is found in the statement:
“The Court must look to the ‘end result’ of the city’s performance of its legislative function in order to determine whether the plaintiff has shown by competent evidence that the rates fixed are clearly unreasonable and confiscatory.”
He then held that the plaintiff had not established such a condition. This last finding is one of fact and must be separately considered.
We think that a recent decision of the Supreme Court of Florida is determinative of the question of law. In General Tel. Co. of Fla. v. Carter, Fla.1959, 115 So.2d 554, the Court considered two petitions for certio-rari from the Florida Railroad and Public Utilities Commission. The purpose of the proceeding was to review two of the Commission’s orders granting an increase in the Company’s intrastate rates. The increase was less than that sought by the Company, and the Company argued that the Commission erred when it based the percentage increase granted on the “system” rate base in that this computation violated the organic law governing the Commission’s activities. The Supreme Court denied the certiorari upon a holding that although the Commission originally used such a base, it subsequently rectified its error, and on reconsideration it made the requisite separation of intrastate and interstate property, operating expenses, and revenues.
In reaching this conclusion the Court stated that the use of the system method of calculating an intrastate rate of return violates the organic law governing rate-making proceedings by State authorities. As the court points out in the Carter case, this “organic law governing rate-making proceedings” has as its parent the Supreme Court of the United States. In 1898, that court rendered its decision in the case of Smyth v. Ames, 169 U.S. 466, 18 S.Ct. 418, 42 L.Ed. 819, dealing with the right of a state legislature to regulate intrastate rail rates by considering the effect such rates would have on both the intra- and interstate business of the railroad. The holding on this matter is explicit:
“In our judgment, it must be held that the reasonableness or unreasonableness of rates prescribed by a state for the transportation of persons and property wholly within its limits must be determined without reference to the interstate business done by the carrier, or to the profits derived from it. The state cannot justify unreasonably low rates for domestic transportation, considered alone, upon the ground that the carrier is earning large profits on its interstate business, over which, so far as rates are concerned, the state has no control. Nor can the carrier justify unreasonably high rates on domestic business upon the ground that it will be able only in that way to meet losses on its interstate business. So far as rates of transportation are concerned, domestic business should not be made to bear the losses on interstate business, nor the latter the losses on domestic business. *851 It is only rates for the transportation of persons and property between points within the state that the state can prescribe ; and when it undertakes to prescribe rates not to be exceeded by the carrier it must do so with reference exclusively to what is just and reasonable, as between the carrier and the public, in respect of domestic business. The argument that a railroad line is an entirety; that its income goes into, and its expenses are provided for, out of a common fund; and that its capitalization is on its entire line, within and without the state, — can have no application where the state is without authority over rates on the entire line, and can only deal with local rates, and make such regulations as are necessary to give just compensation on local business.”
Accord, Simpson v. Shepard, 230 U.S. 3S2, 33 S.Ct. 729, 57 L.Ed. 1511 (1913); Smith v. Illinois Bell Tel. Co., 282 U.S. 133, 51 S. Ct. 65, 75 L.Ed. 255 (1930); Wabash Valley Electric Co. v. Young, 287 U.S. 488, 53 S. Ct. 234, 77 L.Ed. 447 (1933). Our own Supreme Court has recognized that separation of intrastate business from interstate business was essential in State ex rel. R. R. Comm’rs v. Seaboard Air Line Ry., 48 Fla. 129, 37 So. 314, and reaffirmed this holding in State ex rel. R. R. Comm’rs v. Louisville & Nashville R. R. Co., 62 Fla. 315, 57 So. 175, and Florida Rate Conference v. Florida R. R. & Pub. Utilities Comm., Fla.1959, 108 So.2d 601.
It follows that the use of the system method in calculating a rate of return for a municipality violates the organic law governing rate-making proceedings by city authorities.
It is true that the Supreme Court of Florida in the Carter opinion refers to and “ * * * reaffirms our adoption of the ‘end result’ test * * We must, however, point out that this last quoted holding does not obviate the requirement that the basis utilized in achieving the end result must be a basis approved by law. To express our conclusion more directly, it may be said that the reasonableness of the rate must be tested on the return produced by the property directly effected by the rate, i. e., the property of the company used to supply water to the City of South Miami. We hold, therefore, that the chancellor erred as a matter of law when he ruled that the City properly followed the system-wide basis in establishing its rate.
 We must return then to the finding of fact, mentioned above, which followed the chancellor’s adoption of the “end-result” test. His finding is as follows:
“2. The plaintiff has not established that the rates as fixed by the defendants in Ordinance 405 are clearly unreasonable and confiscatory. In that connection, there is no showing that such rates would cause consumers outside the City of South Miami to subsidize the South Miami consumers in order for the plaintiff to realize a reasonable return.”
This finding is contrary to the following finding of the special master:
“It is the recommendation of your Special Master that an. Order be entered determining and finding that South Miami’s Ordinance No. 405 is applicable to South Miami alone; that South Miami be separated from the remainder of Plaintiff’s system for the purpose of determining the effect of Ordinance No. 405; that, as so applied, said Ordinance be determined and declared to be unreasonable, confiscatory, illegal and void * *
As to the proceedings thereafter the chancellor said in his decree:
“ * * * The Court carefully reviewed the memoranda, all the testimony taken before the Master, the evidence presented before the Court, and the entire record in the cause.”
*852 It thus appears that the final decree appealed is predicated not only upon the testimony taken before the special master, but also in part upon evidence submitted in subsequent hearings before the court. Insofar as the disputed questions of fact that were passed upon by the master, his decision was entitled to the presumptions accorded other finders of fact. Kent v. Knowles, 101 Fla. 1375, 133 So. 315; Harmon v. Harmon, Fla. 1949, 40 So.2d 209; Dade County v. Trombly, Fla.App.1958, 102 So.2d 394.
The transcript of testimony taken before the special master consists of nearly 1500 pages. It fully supports the recommendation that he made. We turn then to the testimony and evidence taken before the court after exceptions had been filed to the special master’s report. The only evidence taken before the court other than that pertaining to the allowance of attorney’s fees Jo the defendant, City, was a transcript of the minutes of the City Council of South Miami which set forth the proceedings at the time Resolution 405 was adopted. This exhibit added nothing new to the record already made by the special master. The court did call for, and receive, memoranda of fact; but these were analyses of evidence submitted before the special master designed to support the respective positions of the parties upon the exceptions to the special master’s report. We therefore conclude that the findings of the special master were entitled to the weight usually accorded to such findings.
The rule is firmly established in Florida that a chancellor’s decision refusing to accept findings of a special master should be reversed when the evidence sustaining the master’s finding is clear and convincing. Jones v. Jones, 119 Fla. 824, 161 So. 836, 104 A.L.R. 1. In the instant case, the evidence before the special master clearly supports his finding that utilization of the proper basis renders the rate established unreasonable and confiscatory in that properly computed the return to appellant would be less than 3.0%.[3] We therefore conclude that once the proper basis is applied to appellant’s rate, it clearly appears that the special master’s finding is supported, and the contrary finding of the chancellor is error.
Appellant’s remaining points need not be discussed inasmuch as our holding renders them moot.
The decree appealed is reversed with directions to enter a decree finding the rates prescribed by Ordinance 405 of the City of South Miami unreasonable and confiscatory.
Reversed and remanded.

. From Appellant’s Exceptions to the Report :
“Plaintiff, by its attorneys, hereby excepts to only the following described portions of the Special Master’s Report filed herein. Plaintiff does not except to the recommendations of the Special Master as contained on Page 11 of the Report and the Exceptions herein taken are made to preserve plaintiff’s rights and Exceptions to the designated portions of the Report in the event the Court fails to adopt the recommendations of the Special Master.”

. From the final decree :
“The Court now makes the following observations:
“The Legislature of the State of Florida has delegated to the City of South Miami the legislative function of regulating the rates which may be charged consumers (within the boundaries of that municipality) who utilize the plaintiff’s product. In the performance of that delegated dutj', the city performs a legislative function — not a Quasi-judicial function and not an administrative function. The city is hold to perform that duty within the limitations of that delegated authority. In other words, it is held to duty of affording plaintiff ‘legislative due process.’ The Florida Railroad and Public Utilities Commission has, up until this date, no authority to regulate water rates in the City of South Miami.
“This is an original proceeding — it is not a proceeding in the nature of a review of the findings of the City of South Miami relative to the regulation of water rates.
“The Court has jurisdiction to ascertain the reasonableness of the fixed rates, but only to the extent of determining whether the rates are clearly unreasonable and confiscatory. It has no authority to substitute its judgment for that of the city (in the city’s performance of its legislative function) and thus to fix other rates. Rates fixed by ordinance (provided the city acts within its delegated authority) are presumed reasonable and the plaintiff has the burden of proving that the rates fixed are clearly unreasonable and confiscatory. In matters such as this, if rates are proven to be unreasonable and confisca *849 tory, the courts should not hesitate to strike them down. If not, the courts should not usurp the authority of the rate-making body. When the courts operate within their judicial sphere, legislative and judicial bodies provide a great system of checks and balances— one to the other. This system can only be maintained when the courts remain within that judicial sphere. When courts legislate, the system of cheeks and balances breaks down. As Mr. Justice Terrell once expressed it: ‘When courts legislate, they are nothing more than meddlers.’
“It is apparent in this case that the City of South Miami made a somewhat superficial inquiry and employed a somewhat primary approach in fixing the allowable rates which are here challenged. However, in this original proceeding, the method employed by the city in fixing water rates is not under the scrutiny of the Court, so long as it has not exceeded the authority delegated to it. The Court must look to the ‘end result’ of the city’s performance of its legislative function in order to determine whether the plaintiff has shown by competent evidence that the rates fixed are clearly unreasonable and confiscatory.
“The Special Master, after having heard all the testimony in the case, was of the opinion that Ordinance 405 should be held to be valid, reasonable, and effective only if ‘the effect of Ordinance 405 should be tested on a system-wide basis.’
“This Court has held, under the circumstances reflected by this record, that the city properly followed what has come to bo known as the ‘system-wide’ approach in fixing the allowable rates, but let it be made entirely clear here that this Court recognizes that the City of South Miami has no authority to fix rates to be paid by consumers beyond the boundaries of the City of South Miami. It may prescribe allowable rates to be charged to consumers within its borders — so long as such rates are not confiscatory' — so long as such rates do not have the effect of causing consumers outside the South Miami boundaries to subsidize the South Miami consumers in order that the water company may realize a reasonable return from its operation.
“Therefore, the Court finds that:
“1. The defendants have not exceeded the authority delegated to them by the Legislature.
“2. The plaintiff has not established that the rates as fixed by the defendants in Ordinance 405 are clearly unreasonable and confiscatory. In that connection, there is no showing that such rates would cause consumers outside the City of South Miami to subsidize the South Miami consumers in order for the plaintiff to realize a reasonable return.”

. . See the following rate cases involving water companies in which an average of 5.5% rate of return was considered fair and reasonable: A. Wimpfheimer & Brother, Inc. v. Connecticut Pub. Util. Comm’n, 26 P.U.R.3d 325 (Conn.1958); In re Mystic Valley Water Co., 19 P.U.R.3d 373 (Conn.1957); In re Toms River Water Co., 13 P.U.R.3d 493 (N.J. 1956); Howes v. Mather Water Co., 13 P.U.R.3d 486 (Pa.1956).