R. W. PARRAMORE, *Appellant, v.* A. Y. HAMPTON, B. W. TEDDER AND ELLEN M. TEDDER, *Appellees.*

Where from a bill to enforce what is alleged to be a trust in favor of the complaint, it appears that one of the defendants owned a half interest in real estate, and the other two defendants owned the other half interest, and that the one who owned the half interest, agreed with complainant to purchase the other half interest owned by the two other defendants for the joint benefit of complainant and such defendant but failed to carry out his agreement with complainant, and purchased the said half interest for his own benefit alone, and it does not appear that such defendant occupied any sort of fiduciary relation to the complainant and that the complainant did not furnish any of the money for such purchase, and had no legal interest, or contract rights in the property, and that such defendant was not the agent of complainant in the management or control of the property, no constructive or resulting trust is shown, and a demurrer to the bill for want of equity is properly sustained.

This case was decided by Division B.

Appeal from the Circuit Court for Taylor County.

The facts in the case are stated in the opinion of the court.

*Davis & Sandford,* for appellant;

*H. J. McCall,* for appellees.

HOCKER, J.—R. W. Parramore filed his bill in the circuit court of Taylor county against A. Y. Hampton, a citizen of Taylor county, and B. W. Tedder and Ellen M. Tedder, his wife, of Chatham county Georgia, wherein he alleged that "on the 10th day of January, A. D. 1907, the said Ellen M. Tedder, the wife of the said B. W. Tedder, was then and there the owner of and in the undisputed possession of a one-half undivided interest in and to the following described land, situate, lying and being in the county of Taylor and state of Florida, and more particularly described as follows, to-wit: The northwest quarter of the northeast quarter of section six (6), in township five (5) south of range seven (7) east, being the land on which Hampton Springs is situated; that the other one-half undivided interest in and to said land was owned by and in the undisputed possession of A. Y. Hampton of the county of Taylor and state of Florida, Clem Hampton of the county of Leon and state of Florida, and Sallie B. Smith, of the county of Taylor and state of Florida, and Elizabeth Himes, as your orator is advised and believes; that the said parties still own said land and are in the possession of the same; that on said 10th day of January, A. D. 1907, in the county of Taylor and state of Florida, your orator and the said A. Y. Hampton entered into a verbal contract and agreement, wherein and whereby your orator and the said A. Y. Hampton agreed to purchase the interest of said Ellen M. Tedder in and to said land and to take said interest in

43

said land and hold the same jointly; that it was agreed then and there that the said A. Y. Hampton should go to Savannah, Georgia, the home and place of residence of said B. W. Tedder and Ellen M. Tedder, his wife, and there secure from the said B. W. Tedder and Ellen M. Tedder, his wife, an option for sixty days to your orator and the said A. Y. Hampton to the one-half undivided interest of the said Ellen M. Tedder in and to said land above described; that under and in pursuance to said agreement, the said A. Y. Hampton, thereafter, to-wit: on the 15th day of January, A. D. 1907, went to Savannah, Georgia, for the purpose, as your orator understood, to secure an option to the interest of the said Ellen M. Tedder in and to the land above described.

Your orator would further show unto your honor that it was stipulated and agreed by and between your orator and the said A. Y. Hampton that your orator was to furnish the money for the purpose of financing the purchase of the interest of the said B. W. Tedder and Ellen M. Tedder in and to the above described lands; that the said A. Y Hampton owed your orator about $700 interest on money that he had borrowed of and from your orator; that said interest was about due, and when your orator and the said A. Y. Hampton, on the 10th day of January, A. D. 1907, made and entered into said verbal agreement, the said A. Y. Hampton advised and instructed your orator that he then had in the First National Bank of Perry more than .$500 in money that he had placed there for the purpose of paying the interest on the money that he owed your orator, and that the same was in reality money that should thereafter, to-wit: on the 29th day of January, when said interest became due, be paid to your orator and told your orator then and there that if it was agreeable with your orator that the interest on said money be used for that purpose, that

he would use the same or so much thereof as should be required to take up said option; that said arrangements were satisfactory and agreeable to your orator, and at the time that the said A. Y. Hampton left for Savannah, Georgia, your orator understood that it was his money that the option was to be taken with.

Your orator would further show unto your honor that the said A. Y. Hampton went to Savannah, Georgia, the place of residence of B. W. Tedder and Ellen M. Tedder, his wife, on or about the 15th day of January, A. D. 1907, and then and there took and obtained from the said B. W. Tedder and Ellen M. Tedder, his wife, an option, in writing, for sixty days on the land above described; that he paid for said option his individual check for the sum of $500; that said check was made on the First National Bank of Perry, Florida, and that after said check was drawn and delivered, the payee or holder thereof wired the First National Bank of Perry, Florida, to know if said check was good; that the First National Bank of Perry, Florida, wired the payee or holder of said check that the same was not good and would not be paid; that thereafter your orator came to Perry, Florida, and in a conversation G. R. Battle, the vice president of the First National Bank of Perry, Florida, told your orator about the receipt of the telegram and the answer to the same; that your orator then and there told the said G. R. Battle to wire a different reply to said telegram and to advise that said check would be paid, and your orator told the said Battle that he would pay the same; that the said Battle then and there wired that the check of A. Y. Hampton for $500 was good and would be paid, whereupon said option was given and renewed and became of full force and effect.

Your orator would further show unto your honor that while in Savannah, the said A. Y. Hampton took

an option upon the land above described and took the same in his own individual name instead of in the name of your orator and the name of the said A. Y. Hampton as it was understood that said option should be taken; that the said A. Y. Hampton obtained the sum of $500 from some other source unknown to your orator and paid the check drawn by him and in favor of the said B. W. Tedder or Ellen M. Tedder, his wife, and that the said A. Y. Hampton now refuses to transfer said option to your orator or any part thereof and refuses to let your orator have any part, lot or interest in and to said option or the rights therein granted.

Your orator would further show unto your honor that thereafter to-wit: on the 31st day of January, A. D. 1907, your orator went to Savannah, Georgia, for the purpose of tendering to Ellen M. Tedder and B. W. Tedder, her husband, the sum of $5,500, the balance due on said option; that your orator then and there advised the said B. W. Tedder and Ellen M. Tedder that he was ready to pay them the said sum of $5,500, and requested of them that they make to your orator and the said A. Y. Hampton jointly a deed to said land; that the said B. W. Tedder and Ellen M. Tedder, his wife, failed and refused to make to your orator and the said A. Y. Hampton any deed or conveyance to their interest in said land on account of said option not being transferred to your orator, although the said B. W. Tedder and Ellen M. Tedder well knew that said option had been taken in trust for your orator and the said A. Y. Hampton by the said A. Y. Hampton and well knew of your orator's equities and rights in said option; and your orator would further show unto your honor that he is now ready and willing to pay said sum of $5,500, the balance due on said option and to receive a deed therefor to the same in the name of your orator and the said A. Y. Hampton.

Your orator would further show unto your honor that while the legal title to said option and the legal right to pay said money and receive a deed therefor is now in in the said A. Y. Hampton and belongs to him; that he holds the same in trust for himself and your orator; that in equity a one-half undivided interest of the said Ellen M. Tedder and B. W. Tedder belongs of right to your orator upon his paying the said sum of $5,500; that under and in accordance with the terms of the agreement between your orator and the said A. Y. Hampton, it was understood and agreed that while your orator was to pay the entire sum of $6,000 to the said B. W. Tedder and Ellen M. Tedder, that the said A. Y. Hampton was to secure your orator for one-half of said sum, to-wit: $3,000 by some means not definitely agreed upon by your orator and the said A. Y. Hampton.

Your orator would further show unto your honor that the said A. Y. Hampton has covinously and fraudulently secured said option in himself; that he has secured said option in himself contrary to the agreement between himself and your orator; that in equity your orator is entitled to a one-half interest in the said option and in the rights therein granted, and your orator stands now ready and willing and waiting and able to carry out, perform and abide by each and every the parts, agreements and stipulations in his verbal agreement with the said A. Y. Hampton made by your orator, and comes into this court and asks that the said A. Y. Hampton be ordered, commanded and directed by a decree of this honorable court to comply with, carry out and abide by the agreements, stipulations and conditions of said agreement made and entered into by him.

Your orator would further represent unto your honor that he was ready and willing and still stands ready, willing and axious to carry out and abide by his agree-

ment with the said A. Y. Hampton and of the said A. Y. Hampton with Ellen M. Tedder and B. W. Tedder as contained in said option so far as it relates to the paying of the said B. W. Tedder and Ellen M. Tedder the said sum of five thousand and five hundred dollars to take upon the said option as made by the said A. Y. Hampton with the said B. W. Tedder and Ellen M. Tedder for the use of the said A. Y. Hampton and your orator, and the said defendants well knew and now well know that your orator stands and is able, willing, ready, anxious and waiting to carry out and perform each and every of his agreements made with reference to said contracts.

Your orator would further show unto your honor that said B. W. Tedder and Ellen M. Tedder, his wife, are each as your orator believes over the age of twenty-one years; that they are citizens of a state other than the state of Florida, viz: The state of Georgia; that there is no person in the state of Florida the service of a subpœna upon whom would bind the said B. W. Tedder and Ellen M. Tedder; that their present postoffice address is in the city of Savannah, and state of Georgia, and your orator asks that an order for publication be made as to them in terms of law.

Inasmuch therefore as your orator is without relief in the premises, save and except in a court of equity, where alone such matters and things are remedial, your orator prays your honor to take jurisdiction of the matters and things in this bill of complaint contained, and to require the said defendants, A. Y. Hampton, B. W. Tedder and Ellen M. Tedder, his wife, to come into court and to make answer to the foregoing bill of complaint, but not under oath, the answer under oath being and the same is hereby waived; and that your honor will make and grant an order and decree in the premises

declaring that the said A. Y. Hampton holds said option in trust for your orator and that in equity your orator is entitled to a one-half undivided interest in and to said trust and ordering and declaring and requiring the said B. W. Tedder and Ellen M. Tedder, his wife, to make and execute to your orator and the said A. Y. Hampton jointly, a good and sufficient deed to their one-half undivided interest in said land above described and that your orator may have such other and further relief in the premises as the nature of the case may require and as to your honor may seem meet and agreeable to equity, and may it please your honor to grant unto your orator the state's most gracious writ of subpœna directed to the said A. Y. Hampton and the said B. W. Tedder and Ellen M. Tedder, his wife, commanding them on a day certain and under a certain penalty therein to be fixed, to be and appear before this honorable court, and then and there perfect and full answer make to the foregoing bill of complaint and to stand to and abide by and perform such order and decree in the premises as the nature of the case may require and as to your honor shall seem meet and agreeable to equity, and in duty bound your orator will ever pray, etc."

On March 26th, 1907, the defendants demurred to the bill on the ground that the same was without equity. On June 3rd, 1907, the circuit judge, on a hearing, sustained the demurrer and dismissed the bill. From this decree an appeal to this court was sued out returnable to the first Tuesday in August, 1907.

The appellant seeks to have A. Y. Hampton and the Tedders declared trustees for his benefit of a fourth interest in the real estate described in the bill. He does not own any legal interest whatever in the property and does not set up any contract rights therein. Hampton is not and was not his agent in any sense in the manage-

ment or control of said property, and occupied no fiduciary relation of any sort to Parramore with respect to the property. The whole property belonged to Hampton and the Tedders. Not a cent of Parramore's money went into the purchase of the option from the Tedders by Hampton. We are referred to no authority and have seen none which holds that a constructive or resulting trust is established by such circumstances as these. It is not every case of a breach of contract or promise that a court of equity will construe into a constructive or resulting trust. If Parramore had actually furnished the money for the purchase of the Tedder interest and it had been used by Hampton for that purpose, and he had bought in his own name, or if Hampton stood in some sort of fiduciary relation to Parramore with respect to this property, a different case would be presented. Tiffany & Bullard on Trusts and Trustees, p. 28, *et seq.*; Underhill on Trusts and Trustees, pp. 160-175. See also Patrick v. Kirkland, 53 Fla. 768.

The decree of the circuit court is affirmed.

TAYLOR and PARKHILL, JJ., concur;

SHACKLEFORD, C. J., COCKRELL and WHITFIELD, JJ., concur in the opinion.