PLEUS, Judge.
On October 4, 1955, appellant, F. L. Re-vell, filed a complaint in equity against J. W. Crews and Shorewood Corporation seeking a decree: (1) imposing a resulting trust on a portion of real estate owned by the defendants and (2) ordering an accounting be had to determine his proportionate share of the net proceeds realized from the sale by the defendants of certain real property. On January 23, 1956 the original complaint was dismissed “for its failure to allege facts sufficient to show a resulting trust.” Leave was given to amend. On April 19, 1956 the amended complaint, seeking the identical relief as was sought in the original complaint, was dismissed on the ground that it failed “to allege facts sufficient to justify the relief prayed,” and the order dismissing the original complaint was adopted as applicable to the dismissal of the amended complaint. Again, leave was given to amend. Revell declined to amend within the time allowed, and has appealed to this court from the order dismissing his amended complaint.[1]
The complaint as amended alleged the following facts:
Revell, an insurance agent and real estate salesman, had been employed by the Wau-chula Bank Building Association for a number of years prior to May 7, 1946 to collect the rentals from and insure the Association’s real estate holdings in Wauchula. Revell, with informal authority to find a purchaser of this realty, was negotiating a sale to a third party who had indicated that he was willing to purchase the premises for $60,000, pay Revell a 5% commission on the sale plus a 5% commission on any subsequent sale, permit Revell to continue collecting the rentals and insuring the properties provided Revell would take a 25% interest in the realty. In April of 1946 the stockholders of the Association formally authorized Revell to sell the property.
On the afternoon of the stockholders’ meeting Revell mentioned to Crews, president of the Wauchula State Bank, the proposed sale of the Association property. On the following morning at the request of Crews, Revell met with him in his office. There Crews proposed that he and Revell jointly purchase the premises for the sum of $65,000. Within two or three days the two again met and entered into an oral agreement which provided that: they would jointly purchase the premises for $65,000; Crews would furnish the purchase price; Revell would negotiate [2] the sale and forego his commission; Revell would have the right to manage the property, collect commissions on the rentals and insurance, and be paid a commission on any subsequent sale at the rate of 5% of the sales price. It was further agreed that each was to have an individed one-half interest in the property, and that a protracted sales program would be undertaken and from the proceeds of such sale would be deducted the purchase price leaving the net proceeds to be divided equally between Revell and Crews.
Revell successfully negotiated the sale. On May 7, 1946 the Association executed a deed to Crews. On September 11, 1946 Crews gave a mortgage on the property to the First National Bank of Palm Beach to secure the payment .of funds borrowed to make up the purchase price. A short time later at Crews’ request, the oral agreement was modified whereby Revell renounced his right to a commission on rentals and insurance premiums and his right to a commission for managing the property. In December ,of 1946 Crews, joined by his wife, conveyed this property, excepting *338 the bank building which it had been agreed would not be sold and another small parcel, to the Shorewood Corporation, a corporation, wholly owned or controlled by Crews and alleged to be his alter ego. Re-vell, relying upon their oral agreement, assumed the management of, solicited tenants for, collected rentals on, and insured each parcel of the property until that parcel was later sold.
Subsequently, the amended complaint so alleges, sales of various parcels of the property were made either by Crews individually or by the Corporation except for the bank building and another small parcel. All such sales were made with the “assistance” of Revell and “upon the joint consideration of” Crews and Revell. General allegations are made as to plaintiff reposing trust and confidence in defendant in connection with certain of the transactions.[3]
On December 4, 1950 Revell received from Crews as president of the Shorewood Corporation a check for $500 which he has not presented for payment. Since then Re-vell has on several occasions asked Crews to account to him for his share of the net proceeds accrued as a result of rentals collected and gains realized from the sale of the various parcels as well as a division of the property unsold. These demands for an accounting have been unavailing.
Revell alleges a net balance of $59,624.83 exists to be divided between him and Crews based on the following computation:
Receipts:
Sales of Realty $63,000.00
Rentals Collected 68,605.99
Interest Income on Mortgages 10,648.62
Total $142,264.61
Expenses:
Taxes and Insurance $17,629.78
Purchase Price of Realty 65,000.00
Net balance to be divided
Total
82,629.78
59,624.83
It is obvious from the initial order of the court below which is incorporated into the order appealed from that the cause was submitted to it solely on the basis of whether or not the complaint stated facts sufficient to authorize a decree establishing a resulting trust. Although the complaint prays only for the imposition of the resulting trust and the ordering of an accounting, the briefs and argument in this court have enlarged the theory of plaintiff below and now seek to embrace any equity there might be in the complaint. Under the provisions of Rule 1.8(b), 1954 Florida Rules of Civil Procedure, 30 F.S.A., the question before us is whether or not the complaint as amended states a cause for any equitable relief in the light of Tellerine v. Public Realty Company, Inc., 1947, 158 Fla. 556, 28 So.2d 821.
We cannot accept appellant’s theory as apparently propounded that any generalized basis of possible equitable jurisdiction constitutes a basis for equity in the complaint. We therefore explore the only categories consonant with the allegations in which may be classified any possible basis for the chancellor below to have granted equitable relief:
1. As an equitable suit for an accounting it is obvious from the allegations that *339 the basic requirements are not present and we dismiss this without further comment.[4]
2. On the theory of a resulting trust the action of the chancellor below was eminently correct. There is total want of an allegation that plaintiff paid any specific sum for any distinct interest in or aliquot part of any of the land involved, nor did he obligate himself by agreement absolute to pay the same. Later agreements after title vests are not sufficient. The decisions of our Supreme Court are specific: Parramore v. Hampton, 1908, 55 Fla. 672, 45 So. 992; Rosenthal v. Largo Land Co., 1941, 146 Fla. 81, 200 So. 233; Womack v. Madison Drug Co., 1944, 155 Fla. 335, 20 So.2d 256, 257.
3. Nor could there have been a decree in plaintiff’s favor based upon a constructive trust absent a fiduciary relationship or fraud or both and no contention is made in the briefs or at the bar of this court that such theory is applicable.
4. Apparently advanced for the first time in this court is the theory that the allegations are sufficient to justify relief on the basis of there having been a joint adventure. The memorandum order of the court below fails to disclose that the chancellor had before him any such contention.
 That, under the allegations, there was no joint adventure is obvious in that there is no allegation of joint control or right of control nor of a duty on the part of plaintiff to share in any losses which might have been sustained. There might have been sufficient for a court of equity to divine from the allegations a community of interest in the performance of the common purpose and a possible although most nebulous joint proprietary interest in the subject matter. The only right definitely alleged, however, is that of the plaintiff to share in the profits. These five requirements are held to be the prerequisites of-joint adventure in Kislak v. Kreedian, Fla. 1957, 95 So.2d. 510. While it may be difficult to reconcile the prior case of Russell v. Thielen, Fla.1955, 82 So.2d 143 with the requirements set forth in Kislak we not only accept the later decision in Kislak as controlling but are satisfied it can be reconciled because in Russell many hundreds-of dollars were invested by the plaintiff in preparation to placing the lots on the market whereby 110 of said lots had been sold and the value of the remaining lots was shown to have been greatly increased.
Having searched in vain to find any' known basis for equitable relief on the facts alleged in the amended complaint we affirm the court below.
Affirmed.
KANNER, C. J., and DAYTON, As-' sociate Justice, concur.

. Under the authority of Alderman v. Puritan Dairy Co., 1940, 145 Fla. 292, 199 So. 44, we treat this as an appeal from final decree. See also Anderson v. Carlton, 1945, 156 Fla. 170, 22 So.2d 874.

. Just what was involved in Kevell having to negotiate is not made to appear in view of Crews agreeing to buy at a price $5000. in excess of what the stockholders had already formally authorized.

. There is no contention that there was a fiduciary relationship between plaintiff and defendant nor could the allegations support any such contention.

. Lurking in the background as the basis for an attempted suit in equity after so long a period of time is the shadow of the Statute of Limitations which plaintiff might have sought to avoid by taking the chancery course.