HENDRY, Judge.
The appellant, Ruth E. Mitchell, was the second wife of Sam Mitchell, now deceased, and was sued individually and as executrix of the will of Sam Mitchell, by Miriam Mitchell Arlen, Rita Mitchell Nichtberger and Shirley Mitchell Grapes, the three daughters of the deceased, by a previous marriage. Each of the daughters (appel-lees) filed separate but identical complaints seeking to impose a resulting trust upon realty which they allege their father was holding for their benefit at the time of his death. The three cases were consolidated for trial and appeal and this opinion and decision shall apply to each of the cases.
In June, 1945, a one-half interest in the land in question was conveyed by one Arthur Jones and his wife, to Rita. Eighteen days later Rita conveyed her one-half interest in the land to her mother, Ida, (Sam’s first wife) who, together with one Joseph Batkin (owner of the other one-half interest), constructed a motel known as the Ritz Haven Motel. Two years after the conveyance Ida died intestate, leaving as her only heirs her husband, Sam, and their three daughters, Miriam, Rita and Shirley. Sam qualified as administrator of Ida Mitchell’s estate which estate consisted in part of a one-half interest in the motel property together with the furniture and fixtures therein.
While the estate was in process of administration, Miriam, Rita and Shirley each voluntarily executed a “Waiver of Claim to Estate”[1] whereby they each relinquished, *593 set over, assigned and transferred to their father all of their share in the estate of their mother. Their waivers of claim were filed in the estate of Ida Mitchell and the County Judge thereafter entered an “Order of Distribution” whereby Sam was awarded the entire estate of his deceased wife.
On May 9, 1952, five years after Ida died, Sam Mitchell and Joseph Batkin, by a warranty deed, sold and conveyed the Ritz Haven Motel property to one Homer Snodgrass; Sam retained the proceeds of the sale of his one-half interest. On May 12, 1952, Miriam, Rita and Shirley, joined by their husbands, executed a quit-claim deed reciting that they, for and in consideration of the sum of $10 and other valuable considerations, in hand paid by Sam Mitchell, the receipt whereof is hereby acknowledged, have remised, released and quit-claimed and by these presents do re-mise, release and quit-claim unto Sam Mitchell and his heirs, and assigns, forever, all the right, title, interest, claim and demand which they have in and to the Ritz Haven Motel property.
On December 7, 1952, approximately seven months after the execution of the quitclaim deed to Sam by his three daughters, he married the defendant, Ruth E. Mitchell. Twelve days after his marriage to her he deeded his home in such manner that it became an estate by the entirety and within approximately three weeks after his marriage he transferred all of his bank accounts to joint bank accounts with his wife, Ruth. Each deposited money in the accounts from time to time. From December 19, 1952 to February 17, 1953 Sam deposited approximately $34,000 and his wife deposited a little more than $27,000 of her separate funds in the accounts. The evidence shows that the money which Sam deposited in these accounts was derived in part from the sale of the motel property, prior to their marriage.
On August 10, 1959 Sam died leaving a will in which he bequeathed everything he owned to his wife, Ruth. The will was probated; Ruth was qualified as executrix and is now serving in that capacity.
Plaintiffs alleged in their complaints that their father told them shortly after their mother died, and during the administration of their mother’s estate, that if they would sign a waiver of their interest in their mother’s estate to him so that he could be the record owner thereof, he would take their interest in their mother’s estate in trust and manage the same for their benefit and account to them later for the principal and any profits made thereon.
They further alleged that at the time the plaintiffs signed the quit-claim deed to their father he again stated to them that he would hold their respective interests in the property in trust for them and account to them for the same, together with any profits realized from the sale of said property and for any profits made on investments and re-investments of the proceeds.
We consider the foregoing allegations to be the basic and controlling allegations of this case.
The defendant moved to dismiss the complaint in each of the suits; after hearing on the motions, they were denied. Defendant then filed her answer in which she denied the existence of any trust and alleged that the waivers in the county judge’s court and the quit-claim deed estopped the plaintiffs from having or claiming any right, title or interest in or to the property ; that the plaintiffs’ action is barred by § 689.05 Fla.Stat., F.S.A., in that the plaintiffs *594 seek to recover on an oral declaration of trust involving real property.
After hearing testimony and considering the case on the merits, the chancellor found that the equities were with the plaintiffs and decreed that a resulting trust was recognized in favor of the plaintiffs and that the defendant, Ruth E. Mitchell, individually and as executrix of Sam Mitchell’s will, was holding said assets in trust for the plaintiffs.
The daughters’ complaint proceeded solely on the theory of a resulting trust and throughout their brief they have stated that this case involves only a resulting trust.
 Several issues are raised by this appeal. However, as we view it the determinative question is whether the facts of this case bring it within the concept of a resulting trust. If this is not a resulting trust situation, then no amount of evidence of the intent of the parties, and no amount of oral declarations of trust can operate to create a resulting trust. This does not mean that once a resulting trust situation is alleged, parol testimony can not thereafter be introduced to support, corroborate or strengthen the presumption or its rebuttal. We mean only that in the absence of a resulting trust situation (or a constructive trust, which was not alleged) the Florida Statute of Frauds (Section 689.05, Fla. Stat., F.S.A.) would operate to prevent any oral declarations of trust in the real property in question. Neither the complaint nor the evidence shows that this case comes within the concept of resulting trusts.
In Wadlington v. Edwards, Fla.1957, 92 So.2d 629, our Supreme Court clearly defined a resulting trust and distinguished it from a constructive trust. It was pointed out that a resulting trust is a status that automatically arises by operation of law out of certain circumstances.
We feel compelled to review the circumstances under which a resulting trust may arise in order to show why such a trust could not arise under facts of this case.
Three situations are uniformly recognized as giving rise to a presumption of a resulting trust.[2] They are as follows:
1. Where an express trust fails.
2. Where an express trust does not exhaust the trust estate.
3. Where property is transferred to one person and the purchase price is paid by another.
Unless the plaintiffs can bring themselves within one of these categories, there can be no resulting trust.
The first two situations stated present no particular difficulty in most cases and are clearly not involved in this suit. The third situation, however, has given rise to much confusion in that some modern cases have used language which might be interpreted as extending this rule to the situation of a gratuitous transfer by an owner of property to another. The distinction between these situations is extremely important and it is upon this distinction that we find that no resulting trust could have arisen under the facts of this case.
It may be helpful at this point to briefly trace the origin of this particular trust situation.
During the 15th and 16th centuries it became a common, if not universal, practice on the part of landowners in England to have the legal title held by others for their use. The practice became so general that in 1518 it was said that “few men be sole seized of their own land”. It was not unnatural, therefore, that the courts held that when land was conveyed without consideration it was to be presumed that the transferee was to hold the land for the use of the transferor. Similarly, it was presumed that when one person purchased land and took title in the name of another, the latter *595 was intended to bold to the use of the former. The use which thus arose from the presumed intention of the transferor or purchaser was called a resulting use.
It would seem that the reason for presuming an intention to reserve a use upon a gratuitous transfer ceased when the Statute of Uses came into being in 1S35 and turned uses into legal estates, thus vesting the legal and equitable estates in the usee. It would now serve no practical purpose for a landowner to make a conveyance with a reservation of a use in himself because he would remain the holder of both the legal and equitable title in the land. If such a conveyance were nonetheless made, it would seem to signify that the transferor intended to vest both the legal and equitable title in the transferee, thus negating the presumption of a resulting trust.
Thus, resulting uses or trusts were restricted in modern law to the situation where land was purchased in the name of another, and there appears to be no modern cases where a mere gratuitous transfer by an owner of land has given rise to the presumption of a resulting trust in favor of the transferor.[3] Surprisingly, few courts actually voice this distinction even though they apply it. The English Property Act of 1925 expressly states that no resulting trust shall arise upon a gratuitous conveyance of land and some of our states have by statute abolished the presumption of a resulting trust even in a purchase money situation, except in certain limited cases.
The justification offered for this distinction is that there are various proper motives for a purchaser taking initial title in the name of another without intending to make a gift to him, i. e., to avoid publicity; for convenience of purchase or to facilitate resale; for security fo.r a debt; for management purposes, etc. However, when property owned by one is transferred to another without consideration, a gift is usually intended.
From our previous statements it might be argued that the entire concept of resulting trusts might be an outmoded carryover from feudal times. This, however, is a legislative problem. Our review of the original theory behind the resulting trust doctrine convinces us that it should be strictly confined to certain acknowledged factual circumstances. Since it was created at a time when such transactions were sufficiently indicative of a trust intention to cause the courts to automatically create a presimiption of a trust, it clearly should not be extended to areas where, if anything, the presumption of a gift is more logical.
Likewise, it was clearly the purpose of § 689.05 Fla.Stat., F.S.A., to preclude oral declarations of trust in real property except for resulting and constructive trust situations.[4] If a resulting trust situation could arise solely from an alleged gratuitous conveyance by an owner of land to another, then this exception to § 689.05 is almost as great as the rule. In fact, the exception may be considered greater than the rule when it is realized that a resulting trust situation carries with it the presumption of a trust in favor of the grantor.
An exhaustive investigation of Florida decisions concerning resulting trusts has failed to reveal any cases wherein a resulting trust was created upon a gratuitous conveyance by the owner of property to another. Appellees, in their brief, cite no such cases.
In all cases (other than the above mentioned situations 1 and 2) wherein our courts have established a resulting trust in real property, money, or credit, has been provided by one person towards the pur *596 chase price of land at the precise time that title to such land has been taken in the name-of another. Even as far back as 1908, our Supreme Court in Parramore v. Hampton, 55 Fla. 672, 45 So. 992, stated at page 994:
“It is not every case of a breach of contract or promise that a court of equity will construe into a constructive or resulting trust. If Parramore had actually furnished the money for the purchase of the Tedder interest, and it had been used by Plampton for that purpose, and he [Hampton] had bought in his own name, or if Hampton stood in some sort of fiduciary relation to Parramore with respect to this property, a different case would be presented.”
It would be useless to cite the multitude of Florida cases which have stated that the presumption of ,a resulting trust arises where one man’s money has been invested in property and the deed is taken in the name of another; it does not arise because of fraud or from an expression or agreement of the parties. However, a few of such cases are: Wadlington v. Edwards, Fla.1957, 92 So.2d 629; Elvins v. Seestedt, Fla.1941, 4 So.2d 532; Willard Homes, Inc. v. Sanders, Fla.App.1961, 127 So.2d 696; Martin Builders’ Supply, Inc. v. Green Mansions, Inc., Fla.App.1959, 115 So.2d 575.
As far back as 1866, the Supreme Court of Michigan stated: [5]
“This doctrine of resulting trusts has never been applied to mere voluntary conveyances. Mere want of consideration has never raised resulting trusts out of these: Young v. Peachy, 2 Atk., 256; Lloyd v. Spillet, 2 Id., 148; Leman v. Whitley, 4 Russ. 423; Sturtevant v. Sturtevant, 20 N.Y., 39.”
In Wodonos v. Wodonos, Fla.1952, 62 So.2d 78, our Supreme Court held that neither a resulting nor a constructive trust could be proven upon the allegations of a complaint that realty was conveyed by plaintiff’s father-in-law to plaintiff’s wife but intended as a gift to both plaintiff and his wife. The court said:
“[2] In analyzing his pleading, we take the position that plaintiff has stated his case in the light most favorable to his right to relief. Sec. 689.05, Florida Statutes 1951, F.S.A. provides that 'declarations and creations of trust * * * shall be manifested and proved by some writing * * Therefore we assume that had there been written evidence of the trust, either by the deed or by an independent document, plaintiff would have stated that fact in his complaint.
“[3] Obviously the Court cannot put into operation a desire on the grantor’s part which would nullify the statute. On the contrary, the grantor is unalterably bound to the legal effect of his acts, interpreted in the light of that statute.
“[4] It follows that the voluntary conveyance of the absolute title to real property vests ownership in the grantee, free of any parol declaration of trust.”
In Shipe v. Hillman, 206 Or. 556, 292 P.2d 123, the Supreme Court of Oregon clearly stated the distinction between a gratuitous transfer by an owner of land and a purchase money conveyance. The plaintiffs (heirs of one Hillman, Sr.) sought to establish a trust in lands conveyed by Hillman, Sr., to the defendant, his daughter and also an heir. Plaintiffs alleged that Hillman, Sr., had frequently purchased land and placed title in the names of his children with the understanding that they would hold it in trust for him and his lawful heirs. Plaintiffs further alleged that they never paid or surrendered anything in exchange for these conveyances. As to this particular conveyance, Hillman, Sr., deeded the property owned by him, directly to the defendant without consideration. The court stated, on page 127, of 292 P.2d, as follows :
“In the case at bar we are confronted with a deed, absolute on its face, which *597 conveyed the lands in question to the defendant. This is not a case where the land was conveyed by a third person to defendant after her father paid the consideration. Rather, it is a situation wherein a father conveyed to his daughter property which he had previously owned.
“[9] Where the owner of the property gratuitously transfers it to another without declaring any trust, a resulting trust does not arise. At common law, however, it was held that where the owner of land enfeoffed or otherwise transferred it to another, the other held the land upon a resulting use for the transferor. The courts took the view that where the conveyance of land was gratuitous the inference was that the transferee was not intended to have the beneficial interest in the land, but that the beneficial interest was retained by the transferor. This inference is no longer drawn, and a resulting trust does not arise where property is gratuitously transferred by the owner without declaring any trust. 3 Scott, Law of Trusts, § 404.1, p. 2164; Bogert, Law of Trusts, 3d Ed., § 73, p. 304.
“[10] If a resulting trust arises at all it must be at the time of the conveyance, for these are obligations imposed by the law itself in spite of the actions of the parties themselves. The law is constantly operant, and without delay attaches the consequence to be derived from the acts of the parties. So far as such trusts are concerned, they are not created nor established by subsequent acts of any of the participants. Chance v. Graham, 76 Or. 199, 148 P. 63.”
We have found no cases factually identical to the case before us where a court found that a resulting trust situation had been established. We have, however, found one Florida case where a constructive trust was established under these factual circumstances. In Williams v. Grogan, Fla.1958, 100 So.2d 407, a son sought specific performance of an alleged parol agreement by which he agreed to deed to his mother all of his interest in the estate of his deceased father in exchange fo,r his mother’s promise to leave said property to him after her death. Plaintiff also sought, in the alternative, to impress a trust on the assets of his mother’s estate. His mother died leaving a will, wherein she devised this property to other people. The facts showed that the mother paid no consideration for the interests which her son deeded to her. The facts further showed that plaintiff, an irresponsible young man, had abounding confidence in his mother and deeded this property to his mother pursuant to the recommendation of her attorney and their assurances that she would take care of his interest. The chancellor, at final hearing dismissed the complaint but our Supreme Court, while agreeing that the alleged oral agreement could not be specifically enforced, held that there was an abuse of a confidential relationship whereby the mother was unjustly enriched at the expense of her son. A constructive trust was established in such assets of the mother’s estate as was deeded to her by her son.
While the above mentioned case does not specifically state that a resulting trust could not have been established in such a circumstance, it is noteworthy that no specific type of trust was alleged in the complaint and yet, there was no reference made in the court’s opinion to a resulting trust. It should also be noted that had a resulting trust been established it would have created a presumption of a trust in favor of the son and thus, the court would only have needed to consider whether this presumption had been rebutted. Instead, the court had to turn to the testimony and find that there was “clear and convincing proof” that a constructive trust was established.
Having shown and adopted the distinction between a gratuitous conveyance by an owner of property, and a transfer of property to one where the purchase price is paid by another, we need now only show that the *598 facts, as alleged by the plaintiffs, do not bring this case within the category of a purchase money resulting trust.
We note that the plaintiffs each became vested with a one-fourth interest in their mother’s estate, through the law of intestate succession,[6] immediately upon their mothers demise.[7] The plaintiffs did not purchase this property either by the payment of money, or credit, nor was there a simultaneous vesting of title in the name of another. The plaintiffs, and their father, each became the owners of this property immediately upon the death of their mother. Thus, this can not fall within the scope of a purchase money resulting trust. If anything, it is more analogous to a gratuitous conveyance by them of land which they owned.
Without in any way detracting from our holding that a resulting trust situation did not exist in the instant case, we point out that the plaintiffs, five years after signing their waivers, executed and delivered a quit-claim deed to their father reciting consideration. This deed effectively conveyed any interest they might have had and precluded them from introducing any testimony to show that there was no consideration. Mills v. Mills, Fla.App.1959, 112 So.2d 298.
We know of no theory in the law of resulting trusts, consistent with the facts set forth in the complaint and the evidence adduced at the trial, which would afford the appellees the relief they seek.
Appellant has also .raised the following points:
1. That the Dead Man’s Statute precluded the plaintiffs from testifying as to the understanding they had with their father.
2. That the evidence in toto was insufficient to establish a resulting trust in favor of the plaintiffs.
Both of these questions delve into testimony as to the intention of the parties. Since we have already determined that this is not a resulting trust situation, and such testimony could not make it one, it would serve no useful purpose to discuss these points.
For the reasons stated, the decree appealed should be reversed, and it is so ordered.
Reversed.

. Waiver of claims to estate signed by Miriam Mitcliell and Rita Miteliell read in part as follows:
That they are “ * * * fully cognizant of the right which they have to share in the estate of their deceased mother, IDA MITCHELL, who died intestate at Miami Beach, Florida, in the month of March 1947, and, with full knowledge thereof, do hereby waive any and all claims *593 against the estate and do hereby relinquish, set over, assign and transfer to their father, SAM MITCHELL, her property rightfully and lawfully due to them as the heirs at law of IDA MITCHELL, it being their intention to take no part of their share in the estate and it being their further intention that their father, SAM MITCHELL, administrator of said estate be given their portion.” [Waiver of claim to estate signed by Shirley Mitchell was substantially the same in both form and content. All waivers were duly signed and acknowledged on February 26, 1948.]

. See: DeMarco v. Estlow, 18 N.J.Super. 30, 86 A.2d 446; Restatement of the Law, Trusts 2d, Chapter 12; Scott on Trusts, Yol. IY, Chapter 12.

. See Seott on Trusts, Yol. IV, Section^ 405 and 40 Harv.L.Rev., p. 669. See also Restatement of the Law, Trusts 2d, § 405, and § 440, wherein a gratuitous conveyance by an owner of property is distinguished from a purchase money transfer.

. Reid v. Barry, 93 Fla. 849, 112 So. 846 at 854.

. Jackson v. Cleveland, 15 Mich. 94.

. § 731.23, Fla.Stat., F.S.A.

. In re: Slawson’s Estate, Fla.1949, 41 So.2d 324.